Jon Mark Hogg (Texas Bar No. 00784286)
JACKSON WALKER, L.L.P.
135 W. Twohig Ave., Suite C
San Angelo, Texas  76903
(325) 481-2560
(325) 481-2585 – Facsimile
jmhogg@jw.com

Gregory M. Saylin (*Pro Hac Vice pending*)
Chris D. Mack (*Pro Hac Vice pending*)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT  84101
Telephone:  (801) 799-5800
Facsimile:  (801) 799-5700
GMSaylin@hollandhart.com
CDMack@hollandhart.com

*Attorney for Defendants Canidae, LLC and K9 Holdings, LLC*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF TEXAS, SAN ANGELO DIVISION

| | |
|---|---|
| CANIDAE, LLC, a Delaware limited liability company, and K9 HOLDINGS, LLC, a Delaware limited liability company, | **COMPLAINT** |
| Plaintiffs, | Case No. 6:21-cv-00019 |
| vs. | Judge _____ |
| EDWARD COOPER, and individual, and CHRISTINE COOPER, an individual, | |
| Defendants. | |

Plaintiffs Canidae, LLC ("Canidae" or the "Company") and K9 Holdings, LLC ("K9") complain of Defendants Edward Cooper ("Mr. Cooper") and Christine Cooper ("Ms. Cooper") as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Canidae is a Delaware limited liability company with its principal place of business in Fairfield County, Connecticut.  None of Canidae's members is a citizen of Texas.

2.      K9 is a Delaware limited liability company with its principal place of business in Delaware.  None of K9's members is a citizen of Texas.

3.      Defendant Edward Cooper is an individual and citizen of Brown County, Texas.

4.      Defendant Christine Cooper is an individual and citizen of Brown County, Texas.

5.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.   In addition, Plaintiffs seek injunctive relief to protect their goodwill, the value of which exceeds $75,000.

6.      The Court has personal jurisdiction over Defendants, as they are citizens of Texas.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the Coopers reside within the boundaries of the Court's district.

8.      Plaintiffs initially brought suit against the Coopers in the United States District Court, District of Delaware, Case No. 1:20-cv-00734-MN, pursuant to a forum selection clause contained in a Class B Unit Incentive Award Agreement ("Incentive Agreement") between the Coopers and K9.  *See* Exhibit 1.

9.      In response to the complaint, the Coopers filed a *pro se* motion to dismiss, alleging in part that they did not enter into the Incentive Agreement and did not consent to the forum selection clause and that, therefore, the Delaware Court did not have personal jurisdiction over them.  The Coopers alternatively moved to transfer the case to this Court.

10.      By filing their motion to dismiss, and alternatively, to transfer the case to this Court, the Coopers waived any argument that the Incentive Agreement's forum selection clause (or any other agreement between the parties as to forum or venue) precludes this Court's jurisdiction over this matter or that these matters should be filed in any other forum or venue.

## GENERAL ALLEGATIONS

11.      Canidae is a pet food company, specializing in the manufacturing of dog food and cat food under the brand Canidae and is a wholly owned subsidiary of K9.

### Mr. Cooper's Offer of Employment

12.      On November 19, 2012, Mr. Cooper executed an Offer of Employment with Canidae Corporation (n/k/a Canidae, LLC) to serve as its VP of Operations.  *See* Exhibit 2 attached hereto.

13.      The Offer of Employment relates to the Incentive Agreement because it relates to several of the terms of employment set forth in the Incentive Agreement.

14.      As VP of Operations, Mr. Cooper led the Company's production operation and was the head of the Company's production facility, known as the Ethos Pet Nutrition facility (the "Production Facility").

15.     As part of his Offer of Employment, Mr. Cooper agreed that "all information learned, heard or otherwise made privy while under Canidae while under Canidae Corporation/Ethos Pet Nutrition employment shall remain under strict confidentiality." *Id.* at 2.

16.     Mr. Cooper also agreed that, during his employment and for one year thereafter, he would not "directly or indirectly solicit or encourage any employee, agent, independent contractor, supplier, customer, consultant or any other person or company to terminate or alter a relationship with Canidae Corporation" and that he would not compete with Canidae during the term of his employment. *Id.* at 2-3.

17.     The Offer of Employment provided for an award of attorney fees and costs to the prevailing party relating to a dispute between Canidae and Mr. Cooper. *Id.* at 3.

**Ms. Cooper's Conditional Offer of Employment**

18.     On March 26, 2015, Ms. Cooper, formerly Christine Milcherska, executed a Conditional Offer of Employment with Canidae Corporation (n/k/a Canidae, LLC) to serve as its Global Regulatory Affairs, Operations, and Compliance Manager. *See* Exhibit 3 attached hereto.

19.     The Conditional Offer of Employment relates to the Incentive Agreement because it relates to several of the terms of employment set forth in the Incentive Agreement.

20.     As part of her Conditional Offer of Employment, Ms. Cooper agreed that, during her employment and for one year thereafter, she would not "directly or indirectly solicit or encourage any employee, agent, independent contractor, supplier, customer, consultant or any other person or company to terminate or alter a relationship with Canidae Corporation" and that she would not compete with Canidae during the term of her employment. *Id.* at 3.

21.     The Conditional Offer of Employment provided for an award of attorney fees and costs to the prevailing party relating to a dispute between Canidae and Ms. Cooper. *Id.* at 4.

22.     During their employment with Canidae, Mr. Cooper and Ms. Cooper married one another.

**Incentive Agreement**

23.     On or around October 30, 2018, Mr. Cooper entered into the Incentive Agreement with K9. *See* Exhibit 1.

24.     Mr. Cooper signed Exhibits A and C to the Incentive Agreement. *See id.* In addition, Mr. Cooper indicated his assent and agreement to be bound by the Incentive Agreement by writing his address under his printed name as part of the participation information on the last page of the Incentive Agreement. *See id.*

25.     By his actions, Mr. Cooper intended to enter into the Incentive Agreement and to be bound thereby.

26.     Mr. Cooper received benefits under the Incentive Agreement, including K9 granting him substantial units of K9.

27.     Pursuant to Exhibit C to the Incentive Agreement, Mr. Cooper agreed to submit, in accordance with federal law, a Section 83(b) election for profits to the Internal Revenue Service ("IRS"). *See* Exhibit 1 at Exhibit C.

28.     On information and belief, and further demonstrating Mr. Cooper's assent, Mr. Cooper submitted a Section 83(b) election to the IRS.

29.     The Incentive Agreement granted Mr. Cooper Class B Units of K9 in consideration for Mr. Cooper's services and Mr. Cooper's agreement to certain restrictive covenants and other ongoing obligations.  *Id.* at § 1.

30.     To induce K9's performance under the Incentive Agreement and at the request of her husband, Ms. Cooper agreed personally to "be bound by all of the terms and provisions" of the Incentive Agreement by executing a "Spousal Consent" attached as an exhibit to the Incentive Agreement.  *Id.* at Ex. B.

31.     The Incentive Agreement expressly extended the Coopers' covenants and agreements not only for the benefit of K9 but also expressly for the benefit of Canidae as a subsidiary of K9.

**The Coopers' Covenants to K9 and Canidae**

32.     As part of their employment with Canidae, and under the Incentive Agreement, Mr. Cooper and Ms. Cooper had access to and knowledge of "information of substantial value to [Canidae and/or K9]", "including but not limited to, techniques, designs, drawings, processes, inventions, developments, equipment, prototypes, business plans, location selection, sales and customer information, investor information, and other business and financial information relating to the business, products, practices and techniques of [Canidae and/or K9]."  (Referred to in the Incentive Agreement and in this Complaint as the "Confidential and Proprietary Information.")  *Id.* at § 4(a).

33.     The Confidential and Proprietary Information was not publicly known and gave Canidae and K9 an advantage over their competitors who do not know or use the Confidential and Proprietary Information.

34.     Mr. Cooper and Ms. Cooper further agreed to "at all times regard and preserve as confidential such Confidential and Proprietary Information obtained by [either of them] from whatever source and [would] not, either during his or her employment or service with [Canidae and/or K9] or thereafter, publish or disclose any part of such Confidential and Proprietary Information in any manner at any time, or use any Confidential and Proprietary Information except on behalf of [Canidae and/or K9], without the prior written consent of [Canidae and/or K9]." *Id.* at § 4(a).

35.     Mr. Cooper and Ms. Cooper also agreed that during their employment and for two years thereafter (hereafter the "Restrictive Period"), that neither of them would "directly or indirectly own any interest in, manage, control, participate in, consult with, render services for, be employed in an executive, managerial or administrative capacity by, or in any manner engage in, any business or entity which is a Competing Business." *Id.* at § 4(b).

36.     Under the Incentive Agreement, the term "Competing Business" is defined as "a business or entity engaged in the (i) business of designing, manufacturing, distributing or selling pet food or treats or (ii) business of providing any other service offered by [Canidae and/or K9] if aggregate annual sales of such service by the [Canidae and/or K9] exceed ten percent (10%) of the total consolidated revenues of the LLC and its Subsidiaries . . . within any geographical area in which [Canidae and/or K9], if any, engage or have approved tactical plans to engage in such businesses." *Id.* at § 4(b).

37.     Mr. Cooper and Ms. Cooper further agreed that during the Restrictive Period neither of them would "directly or through others, solicit, induce or encourage or attempt to solicit, induce or encourage:  (i) any employee, consultant or independent contractor of [Canidae and/or

K9] to terminate his or her relationship with [Canidae and/or K9] in order to become an employee, consultant or independent contractor to or for any other person or business entity; or (ii) the business of any supplier, partner or other person doing business with [Canidae and/or K9] to cease or substantially reduce its business with [Canidae and/or K9]." *Id.* at § 4(c).

**The Coopers Begin Working for a Competing Business**

38.     On information and belief, in early 2019, and while still employed by Canidae, Mr. Cooper and Ms. Cooper began acting on plans to leave Canidae to join a competing business, utilizing Canidae's Confidential and Proprietary Information, and soliciting Canidae's employees and customers, for the benefit of their anticipated new employer.

39.     On information and belief, in early 2019, and while still employed by Canidae, Mr. Cooper and Ms. Cooper accepted offers to join the competing business, a new pet food business near the Production Facility (the "New Business"), that included increases in compensation as well as an ownership interest.

40.     On information and belief, at this time, the Coopers' loyalty switched from being loyal and trying to advance the business of Canidae to being loyal and trying to advance the business of the New Business, even though they both remained employed by and accepted compensation from Canidae.

41.     The New Business is a direct competitor of Canidae, has never been publicly traded, and is a "Competing Business" as defined in the Incentive Agreement.

**Solicitation of Canidae Employees to Terminate Their Employment**

42.     While still employed by Canidae, Mr. Cooper and Ms. Cooper solicited several other Canidae employees, including without limitation Marlon Coffman and, on information and belief, Eddie Winegeart, to leave Canidae and join the New Business.

43.     In or around January or February 2020, Mr. Cooper approached a Canidae employee about employment with the New Business and how it would be up and running soon and that Mr. Cooper "would be in touch."  The employee understood that Mr. Cooper meant to solicit him for a position at the New Business once it was operational.

44.     Mr. Cooper, on behalf of the New Business, offered or assisted in offering Marlon Coffman and, on information and belief, Eddie Winegeart, equity in the New Business as an incentive to terminate their employment with Canidae and join the New Business.

45.     Mr. Winegeart subsequently left his position at Canidae.  On information and belief, Mr. Winegeart accepted the offer for employment with the New Business.

46.     In or around April 18, 2020, Ms. Cooper's father, Tony Milcherska, who had previously done contract work for Canidae, contacted a Canidae employee and told him that he and Mr. Cooper were working at the New Business, that Mr. Cooper was heading the New Business's production facility, and that he hoped to steal away Canidae's employees, indicating that the Canidae employee could seek employment from the New Business.  On information and belief, Mr. Milcherska conveyed this message at the direction and on behalf of the Coopers.

**Termination of Employment with Canidae**

47.     On April 19, 2019, Mr. Winegeart and Ms. Cooper tendered their resignations to Canidae in letters addressed to Mr. Cooper.

9

48.     Two days later, on April 21, 2019, Mr. Cooper tendered his resignation from Canidae.

49.     On information and belief, Mr. Cooper is now the president of the New Business, and the New Business is the employer of Ms. Cooper and Mr. Winegeart.

**Improper Conduct by the Coopers**

50.     On information and belief, Mr. Cooper and Ms. Cooper have utilized and disclosed Canidae's Confidential and Proprietary Information to gain an advantage in competing with Canidae and on behalf of and for the benefit of the New Business.

51.     On information and belief, in or about January 2020, Mr. Cooper and Ms. Cooper solicited and secured a Canidae customer's business for the New Business.

52.     This account produced more than $100,000 in annual sales for Canidae, including $400,000 in 2019.

53.     Ultimately, the customer ended its relationship with Canidae.

54.     As a result of ending the relationship, Canidae had several pallets of empty food bags from this customer remaining at the Production Facility.

55.     In early 2020, Mr. Cooper arranged for a transportation truck to pick up the remaining bags from Canidae.

56.     On information and belief, the bags were picked up for the benefit and use of the New Business.

## FIRST CLAIM FOR RELIEF
**(Breach of Written Contract against Mr. Cooper and Ms. Cooper—Incentive Agreement)**

57.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

58.    The Incentive Agreement is a valid and enforceable agreement that is binding upon Mr. Cooper and Ms. Cooper.

59.    Ms. Cooper expressly agreed to be bound by all of the terms and provisions of the Incentive Agreement, including without limitation those referenced in this Complaint.

60.    Canidae is an intended third-party beneficiary under the Incentive Agreement, and the covenants and agreements set forth therein are expressly for the benefit of and are enforceable by Canidae.

61.    Plaintiffs have fully complied with their obligations under the Incentive Agreement.

62.    Defendants breached the Incentive Agreement including without limitation by doing the following while still employed by Canidae:  (1) directly or indirectly owning any interest in, managing, controlling, participating in, consulting with, rendering services for, being employed by and/or in any manner engaging in the New Business; (2) competing with Canidae on behalf of the New Business; (3) directly or through others, soliciting, inducing or encouraging, or attempting to solicit, induce or encourage Canidae employees to terminate his or her relationship with Canidae in order to become an employee of the New Business; and (4) utilizing and disclosing Canidae's Confidential and Proprietary Information to and for the benefit of the New Business.

63.    Defendants additionally breached the Incentive Agreement including without limitation by doing the following after their employment with Canidae:  (1) directly or indirectly owning any interest in, managing, controlling, participating in, consulting with, rendering services for, being employed by and/or in any manner engaging in the New Business; (2) competing with Canidae on behalf of the New Business; (3) directly or through others, soliciting, inducing or

encouraging, or attempting to solicit, induce or encourage Canidae employees to terminate his or her relationship with Canidae in order to become an employee of the New Business; (4) utilizing and disclosing Canidae's Confidential and Proprietary Information to and for the benefit of the New Business; and (5) directly or through others, soliciting, inducing or encouraging, or attempting to solicit, induce or encourage at least one Canidae customer to terminate its relationship with Canidae in favor of a relationship with the New Business.

64.     Defendants' breaches have resulted in actual damages to Plaintiffs in an amount to be proven at trial.

65.     At all material times, the above described actions have caused irreparable injuries to Plaintiffs, for which Plaintiffs have no adequate remedy available at law and will continue to suffer unless Defendants are enjoined from further breaches of the Incentive Agreement.

66.     Plaintiffs are entitled to preliminary and permanent injunctive relief against Defendants to prevent further damage to Plaintiffs.

**SECOND CLAIM FOR RELIEF**
**(Breach of Implied Covenant of Good Faith and Fair Dealing against Mr. Cooper and Ms.**
**Cooper—Incentive Agreement)**

67.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

68.     In every agreement, there is an implied covenant of good faith and fair dealing.

69.     Under the Incentive Agreement, Plaintiffs reasonably expected that Defendants would be loyal to Plaintiffs and not advance the cause of a Competing Business during their employment. Plaintiffs also reasonably expected that Defendants would not undertake any actions meant to harm Plaintiffs. After employment, Plaintiffs reasonably expected that Defendants would

continue not to utilize their Confidential and Proprietary Information to compete against them or to advance a competing company.

70.     On information and belief, contrary to Plaintiffs' reasonable expectations under the Incentive Agreement, Defendants, both during and after their employment with Canidae; (1) acted on plans to compete against Canidae; (2) recruited key employees at Canidae for the New Business; (3) coordinated their resignations and the resignation of Mr. Winegeart to produce maximum harm to Plaintiffs; (4) used and disclosed Plaintiffs' Confidential and Proprietary Information to Plaintiffs' detriment and the New Business's benefit; (5) joined the New Business to compete with Canidae while still employed by Canidae; and (6) failed to advance and be loyal to Plaintiffs' business while still employed by Canidae.

71.     Defendants' conduct has prevented Plaintiffs from enjoying the fruits of their bargain under the Incentive Agreement.

72.     Defendants' breaches of the implied covenant of good faith and fair dealing have resulted in actual damages to Plaintiffs in an amount to be proven at trial.

73.     At all material times, the above described actions have caused irreparable injuries to Plaintiffs, for which Plaintiffs have no adequate remedy available at law and will continue to suffer unless Defendants are enjoined from further breaches of the Incentive Agreement.

74.     Plaintiffs are entitled to preliminary and permanent injunctive relief against Defendants to prevent further damage to Plaintiffs.

<u>**THIRD CLAIM FOR RELIEF**</u>
**(Breach of Written Contract Against Mr. Cooper—Offer of Employment)**

75.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

76.    Mr. Cooper entered into a binding employment agreement with Canidae in the form of the Offer of Employment.

77.    Canidae has fully complied with its obligations thereunder.

78.    Mr. Cooper breached the Offer of Employment by (1) competing with Canidae during his employment with Canidae; (2) acting on plans for competitive business activity while employed by Canidae; (3) entering into an agreement with the New Business that conflicted with his duties and obligations to Canidae; (4) both during and after employment with Canidae, soliciting or encouraging Canidae's employees and customers to terminate or alter their relationship with Canidae; and (5) utilizing and disclosing Canidae's confidential and proprietary information for the benefit of the New Business.

79.    Mr. Cooper's breaches have resulted in actual damages to Canidae in an amount to be proven at trial.

80.    At all material times, the above described actions have caused irreparable injuries to Canidae, for which Canidae has no adequate remedy available at law and will continue to suffer unless Mr. Cooper is enjoined from further breaches of the Offer of Employment.

81.    Canidae is entitled to preliminary and permanent injunctive relief against Mr. Cooper to prevent further damage to Canidae.

### FOURTH CLAIM FOR RELIEF
**(Breach of Implied Covenant of Good Faith and Fair Dealing against Mr. Cooper—Offer of Employment)**

82.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

83.    In every agreement, there is an implied covenant of good faith and fair dealing.

84.     Under the Offer of Employment, Canidae reasonably expected that Mr. Cooper would be loyal to Canidae and not advance the cause of a Competing Business during his employment.  Canidae also reasonably expected that Mr. Cooper would not undertake any actions meant to harm Canidae.  After employment, Canidae reasonably expected that Mr. Cooper would continue not to utilize its confidential and proprietary information to compete against Canidae or to advance a competing company.

85.     On information and belief, contrary to Canidae's reasonable expectations under the Offer of Employment, Mr. Cooper, during his employment with Canidae; (1) acted on plans to compete against Canidae; (2) recruited key employees at Canidae for the New Business; (3) coordinated his resignation and the resignations of Ms. Cooper and Mr. Winegeart to produce maximum harm to Plaintiffs; and (4) disclosed Canidae's confidential and proprietary information to Canidae's detriment and the New Business's benefit.

86.     On information and belief, during the first year after leaving Canidae and contrary to Canidae's reasonable expectations under the Offer of Employment, Mr. Cooper solicited Canidae employees to join the New Business and used and disclosed Canidae's Confidential and Proprietary Information to the New Business.

87.     Mr. Cooper's conduct has prevented Canidae from enjoying the fruits of its bargain under the Offer of Employment.

88.     Mr. Cooper's breaches of the implied covenant of good faith and fair dealing have resulted in actual damages to Canidae in an amount to be proven at trial.

89.    At all material times, the above described actions have caused irreparable injuries to Canidae, for which Canidae has no adequate remedy available at law and will continue to suffer unless Mr. Cooper is enjoined from further breaches of the Offer of Employment.

90.    Canidae is entitled to preliminary and permanent injunctive relief against Mr. Cooper to prevent further damage to Canidae.

## FIFTH CLAIM FOR RELIEF
### (Breach of Written Contract Against Ms. Cooper—Conditional Offer of Employment)

91.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

92.    Ms. Cooper entered into a binding employment agreement with Canidae in the form of the Conditional Offer of Employment.

93.    Canidae has fully complied with its obligations thereunder.

94.    Ms. Cooper breached the Conditional Offer of Employment by (1) assisting Mr. Cooper in competing with Canidae during her employment with Canidae; (2) acting on plans for competitive business activity while employed by Canidae; (3) entering into an agreement with the New Business that conflicted with her duties and obligations to Canidae; (4) both during and after employment with Canidae, assisting Mr. Cooper in soliciting or encouraging Canidae's employees and customers to terminate or alter their relationship with Canidae; and (5) assisting Mr. Cooper in utilizing and disclosing Canidae's confidential and proprietary information for the benefit of the New Business.

95.    Ms. Cooper's breaches have resulted in actual damages to Canidae in an amount to be proven at trial.

96.     At all material times, the above described actions have caused irreparable injuries to Canidae, for which Canidae has no adequate remedy available at law and will continue to suffer unless Ms. Cooper is enjoined from further breaches of the Confidential Offer of Employment.

97.     Canidae is entitled to preliminary and permanent injunctive relief against Ms. Cooper to prevent further damage to Canidae.

**SIXTH CLAIM FOR RELIEF**
**(Breach of Implied Covenant of Good Faith and Fair Dealing against Ms. Cooper—**
**Conditional Offer of Employment)**

98.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

99.     In every agreement, there is an implied covenant of good faith and fair dealing.

100.     Under the Conditional Offer of Employment, Canidae reasonably expected that Ms. Cooper would be loyal to Canidae and not advance the cause of a Competing Business during his employment.  Canidae also reasonably expected that Ms. Cooper would not undertake any actions meant to harm Canidae.  After employment, Canidae reasonably expected that Ms. Cooper would continue not to utilize its confidential and proprietary information to compete against Canidae or to advance a competing company.

101.     On information and belief, contrary to Canidae's reasonable expectations under the Conditional Offer of Employment, Ms. Cooper, during her employment with Canidae, (1) acted on plans to compete against Canidae; (2) recruited key employees at Canidae for the New Business; (3) coordinated his resignation and the resignations of Ms. Cooper and Mr. Winegeart to produce maximum harm to Plaintiffs; and (4) disclosed Canidae's confidential and proprietary information to Canidae's detriment and the New Business's benefit.

102.     On information and belief, during the first year after leaving Canidae and contrary to Canidae's reasonable expectations under the Conditional Offer of Employment, Ms. Cooper solicited Canidae employees to join the New Business and used and disclosed Canidae's Confidential and Proprietary Information to the New Business.

103.     Ms. Cooper's conduct has prevented Canidae from enjoying the fruits of its bargain under the Conditional Offer of Employment.

104.     Ms. Cooper's breaches of the implied covenant of good faith and fair dealing have resulted in actual damages in an amount to be proven at trial.

105.     At all material times, the above described actions have caused irreparable injuries to Canidae, for which Canidae has no adequate remedy available at law and will continue to suffer unless Ms. Cooper is enjoined from further breaches of the Confidential Offer of Employment.

106.     Canidae is entitled to preliminary and permanent injunctive relief against Ms. Cooper to prevent further damage to Canidae.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty against Mr. Cooper)

107.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

108.     As an employee and officer of Canidae Mr. Cooper owed Canidae fiduciary duties, including without limitation the duties of good faith, loyalty, care, fair dealing, and confidentiality.

109.     Mr. Cooper had access to and knowledge of Canidae's Confidential and Proprietary Information.

110.     As the VP of Operations, Mr. Cooper served as the head of Canidae's production facility.

18

111.    As a key managerial employee and officer of Canidae, Mr. Cooper owed the Company fiduciary duties, including the duties of good faith, loyalty, care, fair dealing and confidentiality.

112.    Mr. Cooper breached his fiduciary duties to Canidae by (1) acting on plans to compete against Canidae; (2) recruiting key employees at Canidae for the New Business; (3) coordinating his resignation and the resignations of Ms. Cooper and Mr. Winegeart to produce maximum harm to Plaintiffs; (4) using and disclosing Plaintiffs' Confidential and Proprietary Information to Plaintiffs' detriment and the New Business's benefit; (5) joining the New Business to compete with Canidae while still employed by Canidae; and (6) failing to advance and be loyal to Plaintiffs' business while still employed by Canidae.

113.    Mr. Cooper's breaches have resulted in actual damages to Canidae in an amount to be proven at trial.

114.    At all material times, the above described actions have caused irreparable injuries to Canidae, for which Canidae has no adequate remedy available at law and will continue to suffer unless Mr. Cooper is enjoined from further breaches of his fiduciary duties.

115.    Canidae is entitled to preliminary and permanent injunctive relief against Mr. Cooper to prevent further damage to Canidae.

116.    Because Mr. Cooper's actions were done knowingly, intentionally, willfully, and/or maliciously, Canidae is entitled to punitive damages in an amount to be proved at trial.

### EIGHTH CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty Against Ms. Cooper)

117.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

118.    Ms. Cooper aided and abetted Mr. Cooper in his breach of his fiduciary duties.

119.    As a key managerial employee and officer of Canidae, Mr. Cooper owed the Company fiduciary duties, including the duties of good faith, loyalty, care, fair dealing and confidentiality.

120.    Mr. Cooper breached his duties by (1) acting on plans to compete against Canidae; (2) recruiting key employees at Canidae for the New Business; (3) coordinating his resignation and the resignations of Ms. Cooper and Mr. Winegeart to produce maximum harm to Plaintiffs; (4) using and disclosing Plaintiffs' Confidential and Proprietary Information to Plaintiffs' detriment and the New Business's benefit; (5) joining the New Business to compete with Canidae while still employed by Canidae; and (6) failing to advance and be loyal to Plaintiffs' business while still employed by Canidae.

121.    On information and belief, Ms. Cooper knowingly aided, abetted, and participated in Mr. Cooper's breaches by helping and assisting Mr. Cooper to carry them out, including without limitation (1) assisting Mr. Cooper in competing with Canidae during her employment with Canidae and (2) assisting Mr. Cooper in utilizing and disclosing Canidae's confidential and proprietary information for the benefit of the New Business.

122.    Ms. Cooper's conduct has resulted in actual damages to Canidae in an amount to be proven at trial.

123.    At all material times, the above described actions have caused irreparable injuries to Canidae, for which Canidae has no adequate remedy available at law and will continue to suffer unless Ms. Cooper is enjoined from further aiding and abetting of Mr. Cooper's breaches of his fiduciary duties.

124.    Canidae is entitled to preliminary and permanent injunctive relief against Ms. Cooper to prevent further damage to Canidae.

125.    Because Ms. Cooper's actions were done knowingly, intentionally, willfully, and/or maliciously, Canidae is entitled to punitive damages in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully pray for judgment against Defendants as follows:

A.    For injunctive relief precluding Defendants from using or disclosing Canidae's Confidential and Proprietary Information, soliciting Canidae's employees or customers, and working for, consulting with, rendering services for, participating in, owning interest in, or offering assistance in any way to the New Business or any Competing Business during the two-year restrictive period;

B.    An order requiring Defendants to return to Plaintiffs any and all Confidential and Proprietary Information in their possession or control and any and all Company property;

C.    For damages in an amount to be proven at trial but not less than $75,000, including actual, consequential, and special damages;

D.    For punitive damages in an amount to be proven at trial.

E.    For attorneys' fees and costs as provided for in Mr. Cooper's and Ms. Cooper's offers of employment, any other agreements and as afforded by law; and

F.    Any other relief the Court deems just and appropriate.

Dated: March 8, 2021

/s/ _____
Jon Mark Hogg (Texas Bar No. 00784286)

21

JACKSON WALKER, L.L.P.
135 W. Twohig Ave., Suite C
San Angelo, Texas  76903
(325) 481-2560
(325) 481-2585 – Facsimile
jmhogg@jw.com

Gregory M. Saylin (*Pro Hac Vice pending*)
Chris D. Mack (*Pro Hac Vice pending*)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT  84101
Telephone:  (801) 799-5800
Facsimile:  (801) 799-5700
GMSaylin@hollandhart.com
CDMack@hollandhart.com


*Counsel for Plaintiffs Canidae, LLC and*
*K9 Holdings, LLC*

16223712_v3