IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| CANIDAE, LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 6:21-CV-0019-H-BU |
| | § | |
| EDWARD COOPER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED
STATES MAGISTRATE JUDGE ON DEFENDANTS' MOTION TO DISMISS**

This employment-related contract dispute was filed by Canidae, LLC, and K9 Holdings, LLC, on March 8, 2021, and referred to the undersigned magistrate judge for pretrial management.[1] *See* Dkt. No. 20.

On July 22, 2021, Defendants, Edward Eugene Cooper and Christine Ann Cooper, filed their Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure for Failure to State a Claim Upon Which Relief Can Be Granted (the "Motion"). Dkt. No. 17. Canidae, LLC, and K9 Holdings, LLC, filed their response to the Coopers' Motion on August 19, 2021, Dkt. No. 32, and the Coopers filed a reply on September 10, 2021. Dkt. No. 44.

---

[1] Canidae first filed suit in Delaware federal court, and after the Coopers' successful motion to dismiss for lack of personal jurisdiction, Canidae refiled in this Court on March 8, 2021. *See* Dkt No. 1; *see also Canidae, LLC v. Cooper et. al*, No. 1:20-cv-00734 (D. Del. May 29, 2020).

1

For the reasons explained below, the undersigned recommends that the Coopers'
Motion be DENIED.

## I.  FACTUAL BACKGROUND

This case involves contractual disputes and related claims brought by a pet food
company, Canidae, LLC, against a husband and wife who served as executive employees
for the company, Edward and Christine Cooper (née Milcherska). *See* Dkt. No. 22.
Canidae's claims against the Coopers relate to three employment-related agreements—an
Offer of Employment to Edward Cooper, a Conditional Offer of Employment to Christine
Cooper, and an Incentive Agreement—and related fiduciary duties and duties of good faith
and fair dealing, all which Canidae alleges the Coopers breached. *See id.* at 3-6. The three
agreements are attached as exhibits to Canidae's Amended Complaint. *See* Dkt. Nos. 22-
1, 22-2, 22-3.

The Coopers were employed by Canidae Corporation at the pet food company's
production facility in Brownwood, Texas. *See* Dkt. No. 22-2 at 2, 22-3 at 2. They both
started their employment with Canidae Corporation—Edward in 2012 and Christine in
2015—by separately executing offers of employment with the company. *See* Dkt. Nos. 17
at 2, 22 at 3-4. The Coopers married each other while employed with the company. *See*
Dkt. No. 22 at 5.

Edward Cooper served as the company's Vice-President of Operations from
December 2012 until his resignation in April 2019, and led the company's production
facility in Brownwood known as Ethos Pet Nutrition. *See* Dkt. No. 22. Christine Cooper

served as the company's Global Regulatory Affairs, Operations, and Compliance Manager from her hiring in March/April 2015 until her resignation in April 2019. *See* Dkt. Nos. 17 at 2, 22 at 4.

In October 2018, while the Coopers were still employed with Canidae Corporation, the company converted from a California corporation to a California limited liability company, or LLC. *See* Dkt. No. 19 at 12. Following the conversion, Canidae Corporation ceased to exist apart from Canidae, LLC, and is not a party to this lawsuit in that name or company structure. *See* Dkt. No. 32 at 11.

Canidae claims that around the same time as the California LLC conversion, the Coopers also executed a Class B Unit Incentive Award Agreement ("Incentive Agreement"), which granted Edward Cooper units of K9 Holdings, LLC, in exchange for his agreement to additional terms of employment and restrictive covenants. *See* Dkt. No. 22. Plaintiff Canidae, LLC, is a wholly owned subsidiary of Plaintiff K9 Holdings, LLC. *See* Dkt. No. 22 at 3.

The Coopers resigned from the company in April 2019. *See id*. at 10. Several months later, in August 2019, the company converted again, this time from a California LLC to its current structure as a Delaware LLC. *See* Dkt. No. 19 at 14.

Throughout this FCR, the undersigned refers to the Plaintiffs Canidae, LLC, and K9 Holdings, LLC, jointly as Canidae, and refers specifically to Canidae Corporation, Canidae, LLC, and K9 Holdings, LLC, where those distinctions are appropriate.

3

## II.  LEGAL STANDARDS

### A.  Basis for Federal Jurisdiction

Federal courts may exercise diversity jurisdiction over a civil action between citizens of different States if the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). This Court retains jurisdiction over this action because Canidae and K9 are both Delaware limited liability companies, the Coopers are citizens of Texas, and the amount in controversy exceeds $75,000. *See* Dkt. No. 1 at 2. Venue is proper in the San Angelo division of this Court because the Coopers are residents of Brown County, Texas, which lies in that division. Dkt. No. 44 at 1; *see* 28 U.S.C. § 1391(b)(1) (a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.").

### B.  Motion to Dismiss Under Rule 12(b)(6)

The Coopers bring their Motion to Dismiss under Rule 12(b)(6), which authorizes the dismissal of a plaintiff's claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, pleadings must demonstrate specific, well-pleaded facts, not merely conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The Court must accept those well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

"The purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for

4

resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (3rd ed. Supp. 2021). In other words, Rule 12(b)(6) "must be read in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. Thus, dismissal under Rule 12(b)(6) "turns on the sufficiency of the '*factual* allegations' in the complaint." *Smith v. Bank of Am., N.A*., 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss*., 574 U.S. 10, 12 (2014) (per curiam) (emphasis in original).

To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged by plaintiffs must "raise a right to relief above the speculative level." *Id*. at 555. While a plaintiff need not detail specific factual allegations, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that "the tenet that a court must accept as true all of the allegations in the compliant is inapplicable to legal conclusions").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The Supreme Court remarked in *Iqbal* that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for

5

more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citations omitted). In sum, when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

In ruling on a Rule 12(b)(6) motion, the court does not evaluate the plaintiff's likelihood of success. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 376 (5th Cir. 2004). Rather, it only assesses whether the plaintiff has pleaded a legally cognizable claim. *Id.* "Whether Plaintiffs have the ultimate burden of proof at trial on any of their claims is irrelevant here because, for purposes of Defendants' Rule 12(b)(6) motion, Plaintiffs have no burden of proof. Rather, the issue is whether Plaintiffs, based on their pleadings, have stated a claim upon which relief can be granted." *Preston v. Seterus, Inc*., 931 F. Supp. 2d 743, 751 (N.D. Tex. 2013).

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Gomez v. Galman, et al.*, No. 20-30508, 2021 WL 5371112, at *2 (5th Cir. Nov. 18, 2021) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III.  CANIDAE'S CLAIMS AND COOPERS' MOTION

A.  Summary of Canidae's Claims

Canidae alleges that in early 2019, while still employed by Canidae, the Coopers "began acting on plans to leave Canidae to join a competing business, utilizing Canidae's Confidential and Proprietary Information, and soliciting Canidae's employees and customers, for the benefit of their anticipated new employer." *Id*. at 9.

Canidae also claims that in early 2019, and while still employed by Canidae, the Coopers "accepted offers to join the competing business, a new pet food business near the Production Facility (the "New Business"), that included increases in compensation as well as an ownership interest." *Id*. Canidae charges that at this time "the Coopers' loyalty switched from being loyal and trying to advance the business of Canidae to being loyal and trying to advance the business of the New Business, even though they both remained employed by and accepted compensation from Canidae." *Id.* at 8. Canidae claims that the "New Business is a direct competitor of Canidae . . . and is a "Competing Business" as defined in, and prohibited by, the Incentive Agreement." *Id*. at 9.

Canidae further claims that while the Coopers were still employed by Canidae, they "solicited several other Canidae employees . . . to leave Canidae and join the New Business. *Id*. And that in early 2020, Edward Cooper "approached a Canidae employee about employment with the New Business and how it would be up and running soon and that Mr. Cooper 'would be in touch.'" *Id*. And that Edward Cooper "offered or assisted in offering [the other Canidae employees] equity in the New Business as an incentive to

7

terminate their employment with Canidae and join the New Business." *Id*. One of these employees, Canidae claims, "subsequently left his position at Canidae" and "accepted the offer for employment with the New Business." *Id*.

Canidae claims that in April 2019, the Coopers and another Canidae employee, Eddie Winegeart, resigned from their positions at Canidae and all three now work with the New Business where Edward Cooper serves as president. *Id*. at 9-10.

The following year, in April 2020, Canidae claims, Christine Cooper's father, "who had previously done contract work for Canidae, contacted a Canidae employee and told the employee that he and Mr. Cooper were working at the New Business, that Mr. Cooper was heading the New Business's production facility, and that he hoped to steal away Canidae's employees, indicating that the Canidae employee could seek employment from the New Business." *Id*. at 9.

Canidae claims that the Coopers "have utilized and disclosed Canidae's Confidential and Proprietary Information to gain an advantage in competing with Canidae and on behalf of and for the benefit of the New Business." *Id*. at 10. Canidae alleges that in January 2020 the Coopers "solicited and secured a Canidae customer's business for the New Business," an account that "produced more than $100,000 in annual sales for Canidae, including $400,000 in 2019." *Id*. That customer ultimately "ended its relationship with Canidae." *Id*.

8

B.  Summary of the Coopers' Motion

The Coopers claim that Canidae's intent in filing this lawsuit was to "harass Defendants through relentless litigation." Dkt. No. 17 at 4. The Coopers' Motion fails to set out specific deficiencies in Canidae's factual allegations, except to generally allege that those allegations "are substantially threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, and without a certain level of factual specificity." *Id.* at 5-12. These averments in the Coopers' Motion are themselves threadbare and conclusory.

Rather than addressing the factual sufficiency of Canidae's claims, the Coopers' Motion is substantially devoted to arguing the merits of and defenses to those claims, both of which are beyond the scope and purpose of a Rule 12(b)(6) motion. The affirmative defenses asserted by the Coopers through their Motion to Dismiss are discussed below in Section IV.C., Analysis of the Coopers' Affirmative Defenses, and appear to include (1) failure of consideration, (2) fraud, (3) duress, and, possibly, (4) statute of frauds. *See id.* at 12-16.

Central to the Coopers' Motion is their assertion that the Plaintiffs now before the Court—Canidae, LLC, and K9 Holding, LLC—have no right to enforce agreements which, if valid at all, were only valid as between the Coopers and Canidae Corporation, which is not a party to this lawsuit in that name or corporate structure. *See id.* The Coopers argue that they neither contracted with Plaintiffs nor intended that Plaintiffs be third-party

9

beneficiaries to the agreements between the Coopers and Canidae Corporation.[2] *See id*. at 7-9.

More specifically, the Coopers claim that "Plaintiff, Canidae, LLC a Delaware Limited Liability Company, appears to be attempting to assert itself as a Third-Party Beneficiary of the employment contracts *(See* Pl. ex. 2, Pl. Ex. 3) between Edward Cooper and Christine Cooper and Canidae Corporation." *Id*. at 7. And that "Canidae, LLC, a Delaware Limited Liability Company, has [sic] nor ever had a contract with either of the Defendants, is not a third-party beneficiary of the Defendants contract with Canidae Corporation and has no right to sue the Defendants for breach of employment contracts made for and between the Defendants and Canidae Corporation." *Id*. at 9. The Coopers make similar arguments regarding having no employment relationship or valid contract with K9 Holdings, LLC. *See id*. at 9-12.

In response, Canidae claims that "California and Delaware statutory law provide that a converted corporate entity is the same entity that existed before the conversion and that the converted entity retains all the rights that the entity previously held." Dkt. No. 32 at 6. In other words, Canidae claims, Canidae Corporation and Canidae, LLC, are one and the same, insofar as it concerns the rights and responsibilities of the parties before the Court.

---

[2] As discussed below, while the Coopers contest Canidae, LLC's standing to sue them for breach of contract arising from the employment relationship on the basis that the Coopers had no contractual relationship with Canidae, LLC, the Coopers bring a breach of contract counterclaim against Canidae, LLC arising from the same facts, although they do so in the name of Canidae Corporation. *See* Dkt. No. 46 at 16-17.

C.  The Coopers' Supplemental Exhibits

The undersigned allowed the Coopers to supplement their Motion to Dismiss with nine exhibits. *See* Dkt. No. 36 at 2-3. Among these supplemental exhibits are what appear to be the Coopers' resignation letters, various declarations by the Coopers and other witnesses, various corporate documents pertaining to Canidae, LLC, from the states of California and Delaware, and two emails from Canidae executives. *See* Dkt. No. 19. Through these exhibits, the Coopers purport to resolve numerous factual and legal disputes, and to "contradict" several of Canidae's claims. *Id.*

A court should not ordinarily look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir.1999). Documents attached to the *complaint* are considered part of the "pleadings" for purposes of a motion under Rule 12(b)(6). *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). Here, Canidae attached several exhibits to its Amended Complaint, including the Incentive Agreement and its exhibits (the Omnibus Joinder, Spousal Consent, and IRS Section 83(b) Election Form), the offers of employment, and other documents related to Christine Cooper's application for employment with Canidae Corporation. *See* Dkt. Nos. 22-1, 22-2, 22-3.

But documents attached to a *motion to dismiss* should not typically be considered part of the pleadings unless "they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000) (internal citation omitted).

11

"Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the *documents constituting the contract* are central to the plaintiff's claim." *Kaye v. Lone Star Fund v. (U.S.), L.P.,* 453 B.R. 645, 662 (N.D. Tex. 2011) (emphasis added). "However, if a document referenced in the plaintiff's complaint is merely *evidence* of an element of the plaintiffs claim, then the court may not incorporate it into the complaint." *Id.* (emphasis added).[3]

Here, the undersigned finds that the supplemental exhibits submitted by the Coopers in connection with their Motion are, at best, merely evidence that may be relevant to the issues presented in Canidae's claims, but are not central to those claims. Additionally, for reasons explained below, neither are these supplemental exhibits central to or necessary for the resolution of the Coopers' Motion. Thus, they should be considered as being outside the pleadings.

When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of the motion to dismiss. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.,* 847 F.2d 186, 193 n.3 (5th Cir. 1988). However, "[i]f . . . matters outside the pleadings are presented

---

[3] In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust,* 500 F.3d 454, 461 n. 9 (5th Cir.2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

For the above reasons, the undersigned finds that the Coopers' supplemental exhibits constitute evidence that may later prove relevant to the ultimate disposition of the claims, but they are not central to or otherwise necessary for the Court to rule on the Coopers' Motion. For this reason, the undersigned exercises the discretion to exclude from consideration the supplemental exhibits at the Rule 12(b)(6) motion stage.

## IV.  DISCUSSION AND ANALYSIS

### A.  Choice-of-law provisions

Canidae brings eight claims against the Coopers, including claims for breach of contract, breach of the implied duty of good faith and fair dealing, breach of fiduciary duty, and aiding and abetting the breach of fiduciary duty. *See* Dkt. No. 22 at 11-21. As explained above, Canidae's claims against the Coopers relate to three agreements—two offers of employment and an Incentive Agreement—each of which contains a choice-of-law provision.[4] *See* Dkt. Nos. 22-1 at 7-8, 22-2 at 4, 22-3 at 5.

The choice-of-law determinations that are intertwined with Canidae's claims and the Coopers' Motion involve factual disputes that are ill-suited for resolution on a Rule

---

[4] Reference here to the Incentive Agreement includes the ancillary contracts which Canidae includes in its Complaint: the Omnibus Joinder and Spousal Consent.

13

12(b)(6) motion and legal questions that the parties did not address.[5] But for those claims that present no conflict between the substantive law of the potentially applicable states' laws, "no choice-of-law analysis is necessary, and we simply apply the law of the forum state." *Mumblow v. Monroe Broad., Inc*. 401 F.3d 616, 620 (5th Cir. 2005) (quoting cases making the same point). In other words, if there is no conflict in state law, the result of the factual sufficiency review will be the same regardless of which state's law applies or how the Court resolves the choice-of-law questions. This is the case with Canidae's First, Third, Fifth, Seventh, and Eighth Claims for Relief, as discussed below.

But where there is a conflict between the substantive law of the potentially applicable states, the factual disputes that are unresolvable on a Rule 12(b)(6) motion and the legal questions unaddressed by the parties renders it impossible for this Court to assess the factual sufficiency of those claims. This is the case with Canidae's Second, Fourth, and Sixth Claims for Relief, also as discussed below.

B. Canidae's Claims

  1. First Claim for Relief: Breach of written contract—Incentive Agreement.

Canidae claims that the Coopers breached the Incentive Agreement while still employed by: "(1) directly or indirectly owning any interest in, managing, controlling,

---

[5] The Coopers include in their Motion a section entitled, "Controlling Choice of Law," but that section is dedicated exclusively to their argument that even if the Incentive Agreement was effectively executed, the restrictive covenants therein are unenforceable under Texas law. *See* Dkt. No. 17 at 17. And, they argue, Texas law would control on this issue under the Restatement (Second) of Conflict of Laws § 187 because the parties did not have an effective choice-of-law provision. *Id*. But they fail to address why, if the Incentive Agreement was effectively executed, its choice-of-law provision—selecting Delaware law—would not also be effective. Canidae also makes only a passing reference to choice-of-law principles, and then limited to contract formation, not breach. *See* Dkt. No. 32 at 13.

14

participating in, consulting with, rendering services for, being employed by and/or in any manner engaging in the New Business; (2) competing with Canidae on behalf of the New Business; (3) directly or through others, soliciting, inducing or encouraging, or attempting to solicit, induce or encourage Canidae employees to terminate his or her relationship with Canidae in order to become an employee of the New Business; and (4) utilizing and disclosing Canidae's Confidential and Proprietary Information to and for the benefit of the New Business." Dkt. No. 22 at 11.

Canidae further claims that the Coopers breached the Incentive Agreement after they left Canidae by: "(1) directly or indirectly owning any interest in, managing, controlling, participating in, consulting with, rendering services for, being employed by and/or in any manner engaging in the New Business; (2) competing with Canidae on behalf of the New Business; (3) directly or through others, soliciting, inducing or encouraging, or attempting to solicit, induce or encourage Canidae employees to terminate his or her relationship with Canidae in order to become an employee of the New Business; (4) utilizing and disclosing Canidae's Confidential and Proprietary Information to and for the benefit of the New Business; and (5) directly or through others, soliciting, inducing or encouraging, or attempting to solicit, induce or encourage at least one Canidae customer to terminate its relationship with Canidae in favor of a relationship with the New Business." *Id.* at 11-12.

Canidae claims that the Coopers executed the Incentive Agreement and that it granted Edward Cooper Class B Units of K9 in consideration for his services and other

terms of employment. *See id*. at 22. Several of these additional terms of employment, Canidae alleges, are reflected in the Incentive Agreement, and also relate to the Coopers' offers of employment. *See id*. at 3-4.

The Incentive Agreement identifies the parties to the agreement as K9 Holdings, LLC, and Edward Cooper as an eligible Participant in the K9 Equity Incentive Plan (the "Plan").[6] *See* Dkt. No. 22-1 at 2. It also provides that the Participant—identified in the Incentive Agreement as Edward Cooper—"provides or will provide services to or for the benefit of Canidae, LLC, a California limited liability company (the "Company"), a wholly-owned subsidiary of [K9 Holdings, LLC]." *Id.* The Incentive Agreement appears to have been executed in October 2018, around the time of Canidae Corporation's conversion in California to Canidae, LLC. *See* Dkt. Nos. 22 at 5, 22-1 at 13-15. A copy of the Incentive Agreement and its three exhibits, discussed immediately below, is attached as Exhibit 1 to Canidae's Amended Complaint. *See* Dkt. No. 22-1.

Although no signature appears for Edward Cooper in the main body of the Incentive Agreement, his name is typed on a page marked as "Signature Page to Class B Award Agreement," under which appears his handwritten post office box address. *See id*. at 12. Immediately following the Signature Pages are three exhibits to the Incentive Agreement which are referenced in and attached to the Incentive Agreement. *See* Dkt. No. 22 at 6, 13-16. These exhibits are: Exhibit A—the Omnibus Joinder signed by Edward Cooper (Dkt.

---

[6] Christine Cooper appears to have joined in the Incentive Agreement through her execution of a Spousal Consent attached as Exhibit B to the Incentive Agreement, discussed below. *See* Dkt. No. 22-1 at 14.

No. 22-1 at 13); Exhibit B— the Spousal Consent signed by Christine Cooper (Dkt. No. 22-1 at 14); and Exhibit C—an IRS Section 83(b) Election Form signed by both Coopers (Dkt. No. 22-1 at 15-16). The bottom of each page of the exhibits bears the notation, "Class B Unit Award Agreement," a reference to the Incentive Agreement. And each exhibit to the Incentive Agreement appears to be signed by the Coopers.

The Omnibus Joinder bearing Edward Cooper's signature is referenced in the Incentive Agreement where it states: "As a condition to the grant of Units pursuant to this Incentive Award Agreement, and by executing this Incentive Award Agreement and the omnibus joinder attached hereto as Exhibit A (to the extent the Participant has not previously executed the LLC Agreement), the Participant agrees to be bound by the terms of the LLC Agreement." Dkt. No. 22-1 at 7.

Canidae also claims that Christine Cooper joined in executing the Incentive Agreement through her execution of the Spousal Consent on November 9, 2018. *See* Dkt. No. 22 at 6. The Spousal Consent states that Ms. Cooper "do[es] hereby join with my spouse in executing the Incentive Award Agreement to which this consent is attached as Exhibit B (the "Award") and do[es] hereby agree to be bound by all of the terms and provisions thereof." Dkt. No. 22-1 at 14. The Incentive Agreement also references the Spousal Consent where it states: "The Participant further agrees that if the Participant is married, the spouse of the Participant has executed and will deliver, contemporaneous with delivery of this Award, the spousal consent attached hereto as Exhibit B." *Id*. at 6.

17

Canidae alleges that Edward Cooper "received benefits under the Incentive Agreement, including K9 granting him substantial units of K9" in exchange for both his services and his "agreement to certain restrictive covenants and other ongoing obligations." Dkt. No. 22 at 5-6. The restrictive covenants at issue here are discussed immediately below. Canidae further claims that "[t]he Incentive Agreement expressly extended the Coopers' covenants and agreements not only for the benefit of K9 but also expressly for the benefit of Canidae as a subsidiary of K9." *Id*.; *see also* Dkt. No. 22-1 at 2.

Canidae asserts that the Coopers also agreed, through the Incentive Agreement, to a two-year "Restrictive Period" during which neither of the Coopers would "directly or indirectly own any interest in, manage, control, participate in, consult with, render services for, be employed . . . by, or in any manner engage in, any business or entity which is a Competing Business" as defined in the Incentive Agreement. Dkt. No. 22 at 7.

Canidae claims that the Coopers further agreed that during the restrictive period, neither of them would

> directly or through others, solicit, induce or encourage or attempt to solicit, induce or encourage: (i) any employee, consultant or independent contractor of [Canidae and/or K9] to terminate his or her relationship with [Canidae and/or K9] in order to become an employee, consultant or independent contractor to or for any other person or business entity; or (ii) the business of any supplier, partner or other person doing business with [Canidae and/or K9] to cease or substantially reduce its business with [Canidae and/or K9].

*Id*. at 8.

Finally, Canidae claims that by virtue of the Coopers' employment with Canidae and their execution of the Incentive Agreement, the Coopers had access to and knowledge

18

of confidential and proprietary information which they agreed to preserve as such. *See id.* at 7.

Through their Motion, the Coopers point out that the Incentive Agreement itself "is not signed by Defendant Edward Cooper in a manner that would indicate his agreement to be bound by the covenants therein." Dkt. No. 17 at 10. The Coopers argue that Edward Cooper's signature on the Omnibus Joinder—referenced in and attached to the Incentive Agreement as Exhibit A—"binds him to the terms of a separate "LLC Agreement," but not the Incentive Agreement. *Id.*

The Coopers' also argue that, while they do not dispute the validity of Christine Cooper's signature on the Spousal Consent—referenced in and attached to the Incentive Agreement as Exhibit B—her agreement to "hereby join with my spouse in executing the Incentive Award Agreement to which this consent is attached as Exhibit B (the "Award")" and to "agree to be bound by all of the terms and provisions thereof" is insufficient to bind either of the Coopers in the absence of evidence that Edward Cooper signed the Incentive Agreement. *Id.*

Otherwise, the Coopers complain that the Incentive Agreement fails to identify the person who signed on behalf of Canidae, that Canidae's Complaint fails to specify the circumstances surrounding the execution of the Incentive Agreement, and that Canidae has failed to provide sufficient evidence of Edward Cooper's signature on or assent to the terms of the Incentive Agreement. *Id.* at 11.

As a threshold matter, the undersigned notes that the Incentive Agreement states that it "shall be governed by and construed and enforced in accordance with the laws of the State of Delaware without reference to choice or conflict of law principles." Dkt. No. 22-1 at 7-8. Thus, before this Court can rule on the Coopers' Motion as it pertains to Canidae's First Claim, it must decide which forum's law should inform the decision of whether Canidae has stated a claim to relief that is plausible on its face.

In diversity cases involving contractual choice-of-law provisions, as here, the forum state's choice-of-law principles determine which state's substantive law applies. *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 770 (5th. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Thus, Texas's choice-of-law principles apply here.

But Canidae's First Claim for Relief presents no conflict between the substantive law of the state allegedly chosen by the parties in that agreement's choice-of-law provision—Delaware—and the substantive law of the forum state—Texas. And when "the laws of the states do not conflict, then no choice-of-law analysis is necessary, and the Court simply applies the law of the forum state." *Mumblow*, 401 F.3d at 620. Thus, the Court need not wade into the choice-of-law quagmire to resolve the Coopers' Motion to Dismiss as to Canidae's First Claim because, under *Mumblow*, the Court applies Texas law to Canidae's First Claim.

In Texas, "[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3)

20

breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc*. 564 F.3d 386, 418 (*quoting Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).[7]

The principal thrust of the Coopers' attack on this claim is that it must fail for lack of sufficient evidence. But by demanding evidence for Canidae's claims, the Coopers misunderstand the purpose of and standards for a motion under Rule 12(b)(6). All that is required at this stage is a plausible factual basis to infer (1) the existence of a valid agreement, (2) Canidae's performance under the agreement, (3) the Coopers' breach of the agreement, and (4) resulting damages.

Even when applying Rule 8(a) under the more stringent pleading standards announced in *Iqbal* and *Twombly*, those standards would appear to have been met where, as here, the defendant is able to formulate detailed, merit-based arguments and affirmative defenses—purportedly supported by declarations—against those claims. Here, it appears beyond reasonable dispute that Canidae has provided both fair notice of the nature of its claim and plausible factual allegations to support that claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56. The undersigned finds that Canidae has pleaded enough facts that, if true, and viewed in a light most favorable to Canidae, provide a plausible factual basis to infer the existence of a valid agreement in the form of the Incentive Agreement,

---

[7] Under Delaware law, the elements of a breach of contract are: "(1) a contractual obligation; (2) a breach of that obligation, and (3) resulting damages." *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct. 2005).

Canidae's performance under the agreement, the Coopers' breach of the agreement, and resulting damages to Canidae.

As for the Coopers' argument that the Plaintiffs here are not the same entity that they contracted with and have no right to enforce the agreements at issue, that argument must fail here at the Rule 12(b)(6) stage. While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). And the question of whether Canidae, LLC, is legally one and the same with Canidae Corporation for purposes of the rights and responsibilities of the parties before the Court does involve questions of law. But in ruling on a motion under Rule 12(b)(6), courts are not prohibited from accepting a plaintiff's legal conclusion or the legal effect of well-pleaded facts provided those allegations "reasonably flow from the pleader's description of what happened . . . ." *Waste Mgmt., Inc. v. AIG Specialty Ins. Co.*, 974 F.3d 528, 534 (5th Cir. 2020) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3rd ed. Supp. 2021)).

Here, the undersigned finds that the facts alleged by Canidae are sufficient, at this stage of the proceedings, to plausibly support the conclusion that Canidae, LLC, is the successor entity of Canidae Corporation and legally assumed all Canidae Corporation's rights and responsibilities under the agreements with the Coopers. The ultimate resolution of the factual and legal disputes between the parties is beyond the pleading sufficiency review of the Coopers' Rule 12(b)(6) motion. *See Twombly*, 550 U.S. at 556.

For these reasons, the undersigned RECOMMENDS that the Court deny the Coopers' Motion to Dismiss Canidae's First Claim for Relief.

### 2. Canidae's Second, Fourth, and Sixth Claims for Relief: Breaches of implied covenants of good faith and fair dealing.

Canidae claims that the Coopers breached the implied covenant of good faith and fair dealing in connection with the Incentive Agreement (Second Claim) when they: "(1) acted on plans to compete against Canidae; (2) recruited key employees at Candidate for New Business; (3) coordinated their resignations and the resignation of Mr. Winegeart to produce maximum harm to Plaintiffs; (4) used and disclosed Plaintiffs' Confidential and Proprietary Information to Plaintiffs' detriment and the New Business's benefit; (5) joined the New Business to compete with Canidae while still being employed by Canidae; and (6) failed to advance and be loyal to Plaintiffs' business while still being employed by Canidae." Dkt. No. 22 at 13. Canidae makes nearly identical claims in connection with the Offer of Employment (Fourth Claim) and Conditional Offer of Employment (Sixth Claim).[8]

Canidae claims that the offers of employment and Incentive Agreement created reasonable expectations that the Coopers (1) would not advance the cause of a Competing Business during their employment, (2) would not undertake any action meant to harm

---

[8] The only difference between the implied duty of good faith and fair dealing claims is that Canidae does not allege in connection with the Offer of Employment (Fourth Claim) and Conditional Offer of Employment (Sixth Claim) that the Coopers joined the New Business to compete with Canidae while still being employed by Canidae and failed to advance and be loyal to Plaintiffs' business while still being employed by Canidae. *Compare* Dkt. No. 22 at 12-13 with Dkt. No. 22 at 14-18.

Plaintiffs, and (3) would not use Canidae's Confidential and Proprietary Information against them or advance a competing company. *Id.* at 12-13.

Through their Motion, the Coopers' challenge these claims by arguing that there is insufficient evidence of their agreement to be bound by the Incentive Agreement (Second Claim) and that they never contracted directly or specifically with Canidae, LLC, nor did they intend Canidae, LLC, to be a third-party beneficiary to the agreement(s) they had with Canidae Corporation (Fourth and Sixth Claims). *See* Dkt. No. 17 at 10-11.

Unlike Canidae's First Claim for Relief, its Second, Fourth, and Sixth Claims do present conflicts between the states' laws that are potentially applicable. Each of these three claims asserts a breach of the implied covenant of good faith and fair dealing, a claim which Texas does not recognize in the context of an employer/employee relationship. *See City of Midland v. Bryant*, 18 S.W.3d 209, 211 (Tex. 2000) ("We hold [] that there is no cause of action in Texas based on a duty of good faith and fair dealing in the context of an employer/employee relationship."). Due to the at-will nature of employment relationships and "the variety of statutes the Legislature has already enacted to regulate employment relationships," Texas courts do not allow a common-law cause of action here. *Id.* at 216.

In contrast to Texas, the law in the states allegedly chosen by the parties in the choice-of-law provisions—Delaware (Incentive Agreement) and California (offers of employment)—recognizes such a claim. Under Delaware law, the elements of an implied covenant claim are the same as a breach of contract claim: "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the

24

plaintiff." *Fitzgerald v. Cantor*, No. C.A. 16297-NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998) (internal citation omitted).

Similarly, California recognizes a claim for breach of implied covenant of good faith and fair dealing in an employment contract. *Foley v. Interactive Data Corp.*, 765 P.2d 373, 682-83 (Cal. 1988) (quoting the Rest. 2d Contracts, § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.")). "[A] breach of the implied covenant is a breach of the contract." *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (Cal. Ct. App. 2012). "Simply stated, the burden imposed is 'that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" *Id.*

Because the survivability of Canidae's Second, Fourth, and Sixth Claims turns on which state's law applies, a choice-of-law analysis would ordinarily be required to resolve the Coopers' Motion to Dismiss as it relates to these claims.

But here, the Court is not presented merely with a dispute over the construction of a choice-of-law provision within a contract. The Coopers dispute the validity, at least as between the parties nominally before the Court, of the contracts in which the choice-of-law provisions are found—the offers of employment and the Incentive Agreement. The Coopers insist that (1) there is insufficient evidence that Edward Cooper either executed the Incentive Agreement or otherwise agreed to be bound by it, and (2) the offers of employment were between the Coopers and Canidae *Corporation*, not between the Coopers and the plaintiff here, Canidae, *LLC*. *See* Dkt. No. 17 at 7-12. The Coopers further

dispute that they either contracted with Canidae, LLC, or intended that it be a third-party beneficiary to their agreements with Canidae Corporation. *Id.*

When determining whether a contract was formed in the first instance—as this Court must here—courts do not resort to contractual choice-of-law provisions. *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 531 n. 11 (5th Cir. 2020) (citing *Edminster, Hinshaw, Russ and Assoc., Inc. v. Downe Township*, 953 F.3d 348, 351 (5th Cir. 2020) ("[T]he choice-of-law provision has force only if the parties validly formed a contract.")). "Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Edminster*, 953 F.3d at 351 (*quoting Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2nd Cir. 2012)).

And while there was no need to resort to the choice-of-law provisions to resolve the Coopers' Motion as it pertains to Canidae's First Claim for which there was no conflict in state law, here the choice-of-law determination affects whether Canidae's Second, Fourth, and Sixth Claims survive. And as noted above, this choice-of-law determination requires the resolution of factual disputes that are ill-suited for a Rule 12(b)(6) motion and legal questions that the parties did not address. *See CapLOC v. Liberty Mutual Ins. Europe Ltd.*, No. 3:20-CV-3372-B, 2021 WL 2551591, *8 (N.D. Tex. June 22, 2021) (denying a motion to dismiss where the parties had not presented the Court with sufficient evidence to determine whether New York or Texas law governs Plaintiff's breach of contract claim).

26

For these reasons, the undersigned RECOMMENDS that the Court deny the Coopers' Motion to as it pertains to Canidae's Second, Fourth, and Sixth Claims for Relief.

3. <u>Third and Fifth Claims for Relief: Breach of written contract—offers of employment.</u>

Canidae alleges that in November 2012, Edward Cooper "executed an Offer of Employment with Canidae Corporation (n/k/a Canidae, LLC) to serve as its VP of Operations." Dkt. No. 22 at 3. A copy of the Offer of Employment is attached as Exhibit 2 to Canidae's Amended Complaint. Dkt. No. 22-2. And in March 2015, Christine Cooper "executed a Conditional Offer of Employment with Canidae Corporation (n/k/a Canidae LLC) to serve as its Global Regulatory Affairs, Operations, and Compliance Manager." Dkt. No. 22 at 4. A copy of the Conditional Offer of Employment is attached as Exhibit 3 to Canidae's Amended Complaint. Dkt. No. 22-3. The Offer of Employment and the Conditional Offer of Employment ("offers of employment") both identify the Coopers' employer as Canidae Corporation. *See* Dkt. Nos. 22-2, 22-3.

Canidae claims that Edward Cooper breached his Offer of Employment (Third Claim) by: "(1) competing with Canidae during his employment with Canidae; (2) acting on plans for a competitive business activity while employed by Canidae; (3) entering into an agreement with the New Business that conflicted with his duties and obligations to Canidae; (4) soliciting or encouraging, both during and after his employment with Canidae, other Canidae's employees and customers to terminate or alter their relationship with

Canidae; and (5) utilizing and disclosing Canidae's confidential and proprietary information for the benefit of the New Business." Dkt. No. 22 at 14.

And Canidae claims that Christine Cooper breached her Conditional Offer of Employment (Fifth Claim) by: "(1) assisting Mr. Cooper in competing with Canidae during her employment with Canidae; (2) acting on plans for a competitive business activity while employed by Canidae; (3) entering into an agreement with the New Business that conflicted with her duties and obligations to Canidae; (4) both during and after employment with Canidae, assisting Mr. Cooper in soliciting or encouraging Canidae's employees and customers to terminate or alter their relationship with Canidae; and (5) assisting Mr. Cooper in utilizing and disclosing Canidae's confidential and proprietary information for the benefit of the New Business." *Id.* at 16.

In response, the Coopers assert that Canidae's Third and Fifth Claims fail because the offers of employment reflect agreements between the Coopers and Canidae *Corporation*, not Canidae, *LLC*. *See* Dkt. No. 17 at 7-9. Thus, the agreements are unenforceable by Canidae, LLC. *See id*.

Further, the Coopers argue, there was no intention—at least on the part of the Coopers—that Canidae, LLC, or any other entity be a third-party beneficiary to the offers of employment agreements with Canidae Corporation. *See id.* at 7-9. Thus, Canidae, LLC, cannot now interject itself into the relationships that existed between the Coopers and Canidae Corporation. *See id*.

Canidae responds by arguing that the original entity, Canidae Corporation, a California corporation, legally converted first to a California LLC, and later to a Delaware LLC. *See* Dkt. No. 32 at 11-12. Canidae argues that under California statute, an entity that converts from one legal structure to another is the same entity as before the conversion, assuming all the original entity's rights. *See* Dkt. No. 32 at 12 (citing Cal. Corp. Code §§ 1158(a), (b)(1) (West, current with all laws through Ch. 770 of 2021 Reg. Sess.). Delaware law provides the same rights upon entity conversation. *See id.* (citing Del. Code Ann. 6 § 18-214(g), (f) (West, current through ch. 266 of the 151st General Assembly (2021-2022)).

As with Canidae's First Claim for Relief, here there is no conflict between the substantive law of the state allegedly chosen in the choice-of-law provisions of the offers of employment—California—and the substantive law of the forum state—Texas. The elements for a breach of contract in Texas, set out above, are identical to those for a breach of contract in California.[9] And because the "the laws of the states do not conflict, . . . we simply apply the law of the forum state." *Mumblow,* 401 F.3d at 620.

Applying Texas law to Canidae's Third and Fifth Claims for Relief, the undersigned finds that Canidae has alleged sufficient facts—if taken as true and in a light most favorable to Canidae—to plausibly support the conclusion, at this juncture, that the offers of employment were valid agreements, that Canidae performed under those agreements, that

---

[9] California's breach of contract elements are: "(1) the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to plaintiff therefrom." *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (Cal. Ct. App. 2008).

the Coopers breached those agreements, and that Canidae suffered damages as a result of the breaches.

And again, like Canidae's First Claim for Relief, the undersigned finds that the facts alleged by Canidae are sufficient, at this stage of the proceedings, to plausibly support the conclusion that Canidae, LLC, is the successor entity of Canidae Corporation and legally assumed all Canidae Corporation's rights and responsibilities under the agreements with the Coopers. The ultimate resolution of the factual and legal disputes between the parties is beyond the pleading sufficiency review of the Coopers' Rule 12(b)(6) motion.

For these reasons, the undersigned RECOMMENDS that the Court deny the Coopers' Motion to Dismiss Canidae's Third and Fifth Claims for Relief.

4.  <u>Seventh Claim for Relief: Breach of fiduciary duty—Edward Cooper.</u>

Canidae claims that Edward Cooper owed a fiduciary duty to Canidae and breached that duty by: "(1) acting on plans to compete against Canidae; (2) recruiting key employees at Canidae for the New Business; (3) coordinating his resignation and the resignations of Ms. Cooper and Mr. Winegeart to produce maximum harm to Plaintiffs; (4) using and disclosing Plaintiff's Confidential and Proprietary Information to Plaintiffs' detriment and the New Business's benefit; (5) joining the New Business to compete with Canidae while still employed by Canidae; and (6) failing to advance and be loyal to Plaintiffs' business while still employed by Canidae." Dkt. No. 22 at 19.

As with Canidae's other claims, the Court's first task is to ascertain which state's substantive law governs this claim at the Rule 12(b)(6) stage. But as explained above, when

30

the validity and enforceability of an agreement is in dispute—as it is here—courts do not apply choice-of-law provisions within those agreements. *Jongebloed*, 957 F.3d at 523, n. 11. Instead, courts must first ask whether there is a conflict between the laws of the potentially applicable states. If there is, the claim does not lend itself to a Rule 12(b)(6) resolution and a such a motion should be denied on that basis, particularly where the parties, as here, have not addressed the issue. But when "the laws of the states do not conflict, then no choice-of-law analysis is necessary, and we simply apply the law of the forum state." *Mumblow,* 401 F.3d at 620.

This claim allegedly flows from Edward Cooper's position as a "key managerial employee" rather than from contract. Choice-of-law provisions can be either narrow— drafted to apply only to the interpretation or construction of an agreement—or broad— drafted to apply to the entirety of the parties' relationship. *See Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990) (explaining that narrow choice-of-law provisions apply only contract interpretation, and a broad choice-of-law provisions apply to the entirety of the parties' relationship); *see also Rogers v. Standard Eco, LLC*, No. 3:20-CV-002016, 2020 WL 6392432, *1-2 (S.D. Tex. Nov. 2, 2020). Thus, a broadly drafted choice-of-law provision would govern even non-contractual aspects of the parties' relationship, including fiduciary duties flowing from the relationship itself rather than from any contract, as alleged here.

But such an analysis is unnecessary here because there is no conflict among the states' laws that are potentially applicable to this claim. The Court need not resolve whether

the clause is broad or narrow because it need not apply the clause; the Court, therefore, applies the law of the forum state. *See Mumblow,* 401 F.3d at 620.

The states whose law potentially governs this claim are California (offers of employment choice-of-law provisions), Delaware (Incentive Agreement choice-of-law provision), and Texas (the forum state in the absence of a conflict, under *Mumblow*).

The elements for breach of fiduciary duty in California are: "(1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 646 (Cal. Ct. App. 2018) (internal citation omitted).

Under Delaware law, the elements of a breach of fiduciary duty are (1) a fiduciary duty and (2) defendant breached that duty. *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch.), aff'd sub nom. *ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).

And in Texas, a claim for breach of fiduciary duty in an employment relationship requires showing: (1) the existence of a fiduciary duty; (2) a breach of that duty; (3) causation; and (4) damages, either as an injury to the plaintiff or a benefit to the defendant. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2018).

Here, because there is no substantive conflict among the states' laws in terms of the elements required to state a claim for breach of fiduciary duty, the Court applies the law of the forum state, Texas, to this claim.[10]

---

[10] Even if law in Texas and California differ from Delaware law in their requirement for damages, here Canidae has sufficiently pleaded the damages element so they would state a claim under each state's law.

Canidae claims that Edward Cooper, as the Vice-President of Operations, was an officer, and that because of the nature of his position as a "key managerial employee and officer of Canidae," Edward Cooper had the fiduciary duties of loyalty, good faith, care, fair dealing, and confidentiality. Dkt. No. 22 at 18-19. Canidae further alleges that Edward Cooper breached those duties by (1) working with New Business to compete while still employed by Canidae and (2) misappropriating confidential information. *Id.* at 19.

Applying Texas law to these allegations, the undersigned finds that Canidae has pleaded sufficient facts that, if accepted as true and taken in light most favorable to Canidae, plausibly state a claim for breach of fiduciary duty.

For these reasons, the undersigned RECOMMENDS that the Court deny the Coopers' Motion to Dismiss Canidae's Seventh Claim for Relief.

5. Eighth Claim for Relief: Aiding and abetting breach of fiduciary duty—Christina Cooper.

Finally, Canidae claims that Christina Cooper aided and abetted in Edward Cooper's breach of fiduciary duty by: "(1) assisting Mr. Cooper in competing with Canidae during her employment with Canidae and (2) assisting Mr. Cooper in utilizing and disclosing Canidae's confidential and proprietary information for the benefit of the New Business." Dkt. No. 22 at 20. Christine Cooper's Conditional Offer of Employment contains a choice-of-law provision that is identical to the one found in Edward Cooper's offer of employment. *See* Dkt. No. 22-3 at 5.

33

The Coopers challenge the factual sufficiency of this claim simply by asserting that Christine Cooper "has not aided or abetted any breach of fiduciary duty," without pointing to any factual pleading deficiencies in Canidae's claims. Dkt. No. 17 at 18.

Echoing the analysis above when there is no conflict in the laws of the potentially governing states, the Court applies the law of the forum state. *Mumblow,* 401 F.3d at 620. In Texas, "[a] third party who knowingly aids and assists in the breach of a fiduciary duty may also be liable." *Southwest Texas Pathology Assoc., LLP v. Roosth*, 27 S.W.3d 204, 208 (Tex. App.—San Antonio 2000, no pet.).[11] Here again, there is no substantive conflict among the states' laws, so the Court applies Texas law to this claim.

At the Rule 12(b)(6) stage, Canidae need only allege facts plausibly showing that Christine Cooper knowingly aided or assisted Edward Cooper in the breach of a fiduciary duty he owed to Canidae. Canidae satisfied this standard by alleging that Christine Cooper knew that Edward Cooper was both an employee and an officer of Canidae, and then worked in coordination with him to act against the company.

For these reasons, the undersigned RECOMMENDS that the Court deny the Coopers' Motion to Dismiss Canidae's Eighth Claim for Relief.

---

[11] In California, a person is liable for aiding and abetting in "the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325-26 (Cal. Ct. App. 1996). And in Delaware, "[t]he elements of a claim for aiding and abetting a breach of a fiduciary duty are: (1) the existence of a fiduciary relationship, (2) the fiduciary breached its duty, (3) a defendant, who is not a fiduciary, knowingly participated in a breach, and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002). The inclusion in Delaware law of a damage element does not change the outcome here because, as explained above, Canidae sufficiently pleaded the damages element so it would state a claim under Delaware law in addition to the other two states.

C. The Coopers' Affirmative Defenses

In the Coopers' Motion to Dismiss, they assert four affirmative defenses: (1) failure of consideration; (2) fraud; (3) duress; and (4) construed liberally, the statute of frauds. *See* Dkt. No. 17. As discussed above, while state substantive law applies to the parties' claims, including the Coopers' affirmative defenses, under *Erie* principles federal procedural law determines whether an affirmative defense has been properly raised. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991).

"As a general matter, the Fifth Circuit has determined that Rule 12(b)(6) motions to dismiss typically cannot be granted on affirmative defense grounds unless a successful affirmative defense appears clearly on the face of the pleadings." *Estate of Barré v. Carter*, 272 F. Supp. 3d 906, 930 (E.D. La. 2017) (cleaned up). Because a defendant bears the burden to prove an affirmative defense, an affirmative defense generally cannot be raised on a motion to dismiss, unless it "appears clearly on the face of the pleadings." *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 533 (N.D. Tex. 2021). In other words, the facts supporting an affirmative defense must be uncontroverted by the parties. *Carter*, 272 F. Supp. 3d at n.218.

Applying affirmative defenses at the Rule 12(b)(6) stage must be distinguished from typical Rule 12(b)(6) practice in which the statement of claim is itself is tested for sufficiency based upon the application of the controlling substantive law. In contrast, "[i]In a situation involving the barring effect of an affirmative defense, the claim is stated adequately [from the perspective of applicable substantive law], but in addition . . .the

35

complaint includes matters of avoidance that effectively vitiate the pleader's ability to recover on the claim." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3rd ed. Supp. 2021).

Most affirmative defenses fail when tested against these Rule 12(b)(6) standards. And here, the undersigned concludes that the same is true for the Coopers' affirmative defenses. Each affirmative defense raised by the Coopers is bound up in facts that are impossible for the Court to resolve at this juncture, and those facts are far from uncontroverted. Nor do any of the Coopers' affirmative defenses appear "clearly on the face of the pleadings."

For these reasons, the undersigned RECOMMENDS that the Court deny the Coopers' Motion to Dismiss Canidae's breach of contract claims based on the affirmative defenses of failure of consideration, fraud, duress, and the statute of frauds.

## V. REQUEST FOR INJUNCTIVE RELIEF

In the Motion, the Coopers seek dismissal of Canidae's requested preliminary and permanent injunctive relief. Dkt. No. 17 at 18-19. The Coopers argue that Canidae has not satisfied its burden of proving entitlement to injunctive relief because (1) Canidae failed to specifically plead facts satisfying the injunctive relief elements, and (2) the two-year restrictive period in the allegedly enforceable Incentive Agreement has already lapsed, rendering the request for relief moot. *Id.*

In its Amended Complaint, Canidae requests preliminary and permanent injunctive relief on all eight claims. Dkt. No. 22 at 12-14, 16-19, 21. Canidae claims entitlement to

injunctive relief through its inclusion, at the end of each Claim for Relief, of essentially boilerplate language slightly tailored to each claim.[12] *Id*. And then in Canidae's Prayer for Relief, it prays for judgment against the Coopers for, among other things, "injunctive relief precluding Defendants from using or disclosing Canidae's Confidential and Proprietary Information, soliciting Canidae's employees or customers, and working for, consulting with, rendering services for, participating in, owning interest in, or offering assistance in any way to the New Business or any Competing Business during the two-year restrictive period." *Id.* at 21.

Preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure, and "[t]he appropriate procedure for requesting a preliminary injunction is by motion. . . ." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2949 (3rd ed. Supp. 2021). And under Rule 65(a)(1), the Court may order a preliminary injunction "only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The moving party must notify the adverse party of both the motion and the hearing. *Parker v. Ryan*, 960 F.2d 543, 544–45 (5th Cir. 1992); *Sec. & Exch. Comm'n v. Haxton*, No. 3:08-CV-1467-L, 2008 WL 11426856, at *2 (N.D. Tex. Sept. 18, 2008) (Lindsay, J.). Under Rule 6(c), notice of the motion and the hearing must be served on the adverse party at least fourteen days before the hearing. Fed. R. Civ. P. 6(c).

---

[12] For example, at the conclusion of Canidae's First Claim for Relief for breach of the Incentive Agreement, Canidae states: "At all material times, the above described actions have caused irreparable injuries to Plaintiffs, for which Plaintiffs have no adequate remedy available at law and will continue to suffer unless Defendants are enjoined from further breaches of the Incentive Agreement." Each subsequent Claim for Relief contains the same language, but with the final phrase "enjoined from further breaches of the Incentive Agreement" changed to reflect that claim.

37

Here, although Canidae nominally seeks "preliminary" injunctive relief in addition to permanent injunctive relief, Canidae has not filed a motion for a preliminary injunction under Rule 65, requested a hearing on a preliminary injunction, or otherwise pursued such relief. Nor has Canidae asked the Court to advance the trial on the merits and consolidate it with a hearing on the requested injunctive relief, as allowed under Rule 65(a)(2). Thus, the undersigned construes Canidae's Amended Complaint as seeking only permanent injunctive relief and not preliminary. This construction is further supported by Canidae's response to the Motion in which it argues that, "[a]lthough the restrictive periods have come and gone, Plaintiffs are entitled to the benefit of their bargain, and the Court can properly grant prospective enforcement of the restrictive periods *if* it determines that Defendants have violated their restrictive covenants." Dkt. No. 32 at 22. (emphasis added). So construed, the undersigned next addresses the Coopers' Motion as it pertains to this relief.

The Court considers the motion to dismiss the requested injunctive relief under the Rule 12(b)(6) standard to test whether Canidae as stated enough facts to allege a plausible entitlement to relief, assuming all facts alleged are true and construing all inferences in its favor.

"An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). A party seeking either a preliminary injunction or temporary restraining order must prove four elements:

1. a substantial likelihood of success on the merits of his case;

2. a substantial threat of immediate and irreparable harm for which there is no adequate remedy at law;

3. that the threatened injury outweighs any harm that the injunctive order might cause the defendant; and

4. that a temporary restraining order will not disserve the public interest.

*Dearmore v. City of Garland*, 400 F. Supp. 2d 894, 898 (N.D. Tex. 2005) (internal citation omitted).

Injunctive relief will be denied if the movant fails to prove any of these four elements. *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). A federal court may issue a temporary restraining order without notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

In the Motion, the Coopers broadly claim that Canidae failed to show the merits of their case, and thus are not entitled to preliminary injunctive relief. Dkt. No. 17 at 18. In the alternative, the Coopers urge the Court to deny injunctive relief because the contract non-compete clauses dictate a restriction period of two years, which has already passed, thus making injunctive relief moot. *Id.* at 18-19.

In response, Canidae asserts that the Cooper's argument is unfounded because, if granted, a party could breach a restrictive covenant by simply waiting for the restrictive period clock to run out. Dkt. No. 32 at 17-18. Instead, as noted above, Canidae asks the

39

Court to grant its request for prospective relief if the Court determines that the Coopers violated the restrictive covenants. *Id.* at 17.

Accepted in the light most favorable to Canidae, the pleaded facts are sufficient to plausibly support that Canidae has a substantial likelihood of success on the merits. Canidae presented contractual agreements with Edward and Christine Cooper that include non-compete clauses prohibiting the behavior that the Coopers are accused of doing, such as working for a competing New Business and soliciting Canidae employees and clients. Canidae has sufficiently alleged that the Coopers have successfully solicited at least one employee and one client. *See Bruckner Truck Sales, Inc. v. Bayou Diesel Servs., LLC*, No. 2:17-CV-0204, 2017 WL 10152283, at *10 (N.D. Tex. Nov. 21, 2017), report and rec. adopted, No. 2:17-CV-204-J, 2018 WL 4076478 (N.D. Tex. Jan. 5, 2018) (finding evidence of former employees now working for competing business establishes a likelihood of success on the merits). Further, the Coopers' core argument that Canidae, LLC, is not the successor entity to contracts the Coopers had with Canidae Corporation is unlikely to alter the above conclusion at this stage of the proceedings for the reasons explained above.

The second factor considers the threat of irreparable harm the Coopers' actions present if left unchecked. Canidae stated that due to the Coopers' alleged competing and non-loyal activities, Canidae has lost at least one employee and one client. Canidae also states that the Coopers are poised to continue to use Canidae's confidential and proprietary information to compete against it, by virtue of their continued employment with New

40

Business. These facts, taken as true, plausibly demonstrate that Canidae would be irreparably harmed if the Coopers' alleged conduct was allowed to continue. *See Bruckner Truck Sales*, No. 2:17-CV-0204, at *10 (finding that solicitation of employees creates personnel loses that are difficult to calculate, and thus show irreparable injury).

Under the third factor, the Court must consider the balance of harms between Canidae's continued injury against the burden the requested injunction imposes on the Coopers. Canidae's request that the Court enjoin the Coopers from working with New Business imposes a burden on the Coopers, effectively requiring them to cease their employment, if they are in fact still employed with New Business.

The other injunctive requests, such as ceasing the solicitation of Canidae employees and customers, and using confidential and proprietary information, do not appear to impose significant burdens because they freeze the Coopers' allegedly harmful activity until the case has an opportunity to be tried on the merits. 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2947 Purpose and Scope of Preliminary Injunctions (3rd ed. Supp. 2021) ("[T]he preliminary injunction is appropriate whenever the policy of preserving the court's power to decide the case effectively outweighs the risk of imposing an interim restraint before it has done so.").

It is impossible for the Court at this juncture to perform a thorough assessment of the potential harm that might be caused with or without the permanent injunction sought by Canidae. But it is sufficient at this stage for the undersigned to find—which he does— that Canidae has alleged sufficient facts that if true and viewed in a light most favorable to

41

Canidae, plausibly support a conclusion that the threatened harm to it outweighs the harm that a permanent injunction might cause the Coopers. Although once determined on the merits, Canidae may not be entitled to each form of injunctive relief sought, it has nevertheless pleaded enough facts to state an entitlement to relief. *See* 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2947 Purpose and Scope of Preliminary Injunctions (3rd ed. Supp. 2021) ("Implicit in the court's discretion under Rule 65(a) is that the court need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case . . .").

Finally, the undersigned finds that Canidae has pleaded enough facts to show that injunctive relief curtailing the Coopers' allegedly competing actions is not against the public interest. "[T]he public maintains not only an interest in knowing that legally binding agreements between parties will be enforced, but also an interest in understanding that persons who breach those agreements cannot profit or benefit from such conduct." *Bruckner Truck Sales*, No. 2:17-CV-0204, at *11.

At the Rule 12(b)(6) stage, the undersigned finds that Canidae has satisfied its pleading requirement in its request for injunctive relief, and therefore, RECOMMENDS that the Coopers' Motion to Dismiss the request for injunctive relief be denied.

## VI. <u>CONCLUSION</u>

In conclusion, the undersigned finds that Canidae has pleaded sufficient facts to state a plausible claim for all eight claims and injunctive relief against the Coopers. For these reasons, the undersigned United States magistrate judge RECOMMENDS that the

Coopers' Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted, Dkt. No. 17, be DENIED as to each claim and request for injunctive relief. The undersigned further RECOMMENDS that the Coopers' affirmative defenses be dismissed without prejudice because at this stage in the litigation, the Coopers have not demonstrated an affirmative defense as a matter of law on the pleadings.

## VII.   RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 9th day of February, 2022.


_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE