IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

CANIDAE, LLC, *et al.*,           §
                                  §
          Plaintiffs,             §
                                  §
v.                                §        Civil Action No. 6:21-CV-0019-H-BU
                                  §
EDWARD COOPER, *et al.*,          §
                                  §
          Defendants.             §

## ORDER AND FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

This employment-related contract dispute was filed by Canidae, LLC, and K9 Holdings, LLC, ("Canidae") on March 8, 2021.[1] *See* Dkt. No. 1. The United States district judge referred to the undersigned magistrate judge for resolution of all non-dispositive motions under 28 U.S.C. § 636(b)(1)(A). *See* Dkt. No. 20. Likewise, all dispositive motions have been referred to the undersigned for findings, conclusions, and recommendations ("FCR"). *Id.*

Before the Court now are Canidae's Motion to Dismiss Amended Counterclaims ("Motion to Dismiss"), Dkt. No. 51, and Canidae's related Request for Judicial Notice, Dkt. No. 57. After considering these motions and relevant caselaw, the undersigned issues the following Order and FCR.

---

[1] Throughout this FCR, the undersigned refers to the Plaintiffs Canidae, LLC, and K9 Holdings, LLC, jointly as Canidae, and refers specifically to Canidae Corporation, Canidae, LLC, and K9 Holdings, LLC, where those distinctions are appropriate.

## I. FACTUAL BACKGROUND

Because the facts of this case have been detailed previously, the undersigned will not recite those facts again here, except to the extent necessary to analyze the instant motions described below. *See* Dkt. No. 62, Findings, Conclusions, and Recommendation of the United States Magistrate Judge on Defendants' Motion to Dismiss ("February 9 FCR"), *R & R adopted* No. 6:21-cv-00019-H-BU, 2022 WL 658581 (N.D. Tex. March 4, 2022).

Taking the facts as presented in the Amended Counterclaims, Defendants Edward and Christine Cooper (née Milcherska) ("the Coopers") served as executive employees of Canidae Corporation, a California entity, at its Ethos Pet Nutrition manufacturing facility in Brownwood, Texas.[2] Dkt. No. 46 at 3-4. Edward Cooper worked in the pet food industry since 1983, and began working as Canidae's Vice-President of Operations in December 2012. *Id.* at 3. Christine Cooper served as Canidae's Global Affairs, Operations and Compliance Manager beginning in March 2015. *Id.*

---

[2] As addressed in the undersigned's February 9 FCR, central to the Coopers' defenses and counterclaims is the assertion that Canidae LLC and K9 Holding, LLC are not the same corporate entity as Canidae Corporation, and therefore have no right to enforce otherwise valid agreements between the Coopers and Canidae Corporation. *See* Dkt. No. 62 at 22. Relevant to the Coopers' counterclaims, the Coopers appear to assert that changes in "company name, ownership, and structure" would change the contractual obligations that Canidae owed the Coopers as employees. *See* Dkt. No. 46 at 16. This assumption has no basis in either California or Delaware law, as a successor entity assumes all rights and obligations of the prior entity. *See* Cal. Corp. Code §§ 1158(a), (b)(1) (West, current with all laws through Ch. 770 of 2021 Reg. Sess.); *see also* Del. Code Ann. 6 § 18-214(g), (f) (West, current through ch. 266 of the 151st General Assembly (2021-2022)).

And as determined before, the undersigned finds that the facts alleged by Canidae in the Amended Complaint are sufficient, at this stage of the proceedings, to plausibly support the conclusion that Canidae, LLC is the successor entity of Canidae Corporation and legally assumed all Canidae Corporation's rights and responsibilities under the agreements with the Coopers.

Edward Cooper's employment contract terms included an annual performance bonus, and Christine Cooper "was promised a substantial bonus (equivalent to a minimum of her annual salary) for her extensive participation and work" obtaining private equity investment funds for Canidae. *Id*. at 9.

In 2018, the relationship between the Coopers and Canidae began to break down. *See id*. Toward the end of the year, Edward Cooper received a K9 Holdings, LLC 2018 Equity Incentive Plan, Class B Unit Incentive Agreement. *Id*. at 9. Christine Cooper received a Spousal Joinder related to the Incentive Plan, which she eventually signed.[3] *Id*. Upon review, the Coopers found the agreements "to be ambiguous and confusing," not understanding the new K9 entity and "why Canidae was listed as an LLC as opposed to a Corporation." *Id*. The Coopers requested a copy of the LLC organizational paperwork, which was denied, and found that there was open engagement or discussion on the topic of Canidae's entity structure. *Id*. at 10. At this time, a "hostile discord between the defendants ensued." *Id*.

Also at the end of 2018, the Coopers inquired about their promised bonuses and "were told that [the Coopers'] bonus would then be awarded by the end of the first quarter of 2019." *Id*. at 9. Toward the end of the first quarter of 2019, however, "a new CEO, Mr. Brett Furio, was abruptly named," and when the Coopers inquired with him about the bonuses, they "were told that . . . no bonuses would be awarded for promises that had been

---

[3] Because the Court detailed the contracts at issue in its February 9 FCR, the undersigned will not detail the contents of the contracts here.

made by prior ownership." *Id*. at 10. Christine Cooper resigned from her position on April 19, 2019, and Edward Cooper did the same on April 21, 2019. *Id*. at 3.

After their resignations, the Coopers allege that Canidae LLC committed and continues to commit tortious acts against them by using Edward Cooper's name and image in marketing materials, making defamatory statements about the Coopers, and pursuing litigation with malicious intent to cause harm. *See id*. These acts, as well as Canidae's alleged fraudulent entity conversion and breach of Edward Cooper's bonus agreement, are the subject of the Amended Counterclaims.

## II. RELEVANT PROCEDURAL HISTORY

The Coopers originally initiated this lawsuit pro se, and first alleged counterclaims in their Answer to the Complaint filed on July 22, 2021.. Dkt. No. 37. After the Coopers sought leave to amend (Dkt. No. 19)[4], and filings by both parties created a procedural quagmire, Canidae filed its initial Motion to Dismiss Defendants' Counterclaims on August 19, 2021. Dkt. No. 33.

The Coopers sought and were granted an extension to respond to Canidae's Motion to Dismiss, and did so on September 16, 2021. Dkt. No. 45. On the same day, the Coopers filed amended counterclaims, beyond the 21-day amend-as-a-matter-of-course deadline and without seeking leave of Court, as required by Federal Rule of Civil Procedure

---

[4] Through the Coopers' Motion to Amend/Correct Answer to Amended Complaint Counterclaim, Dkt. No. 19, they sought to add nine exhibits to their Motion to Dismiss (Dkt. No. 17). After discussing Dkt. No. 19 with the parties in the August 19, 2021 Status Conference, the Court liberally construed the document as a motion to supplement the Coopers' Motion to Dismiss (Dkt. No. 17), and granted the motion, directing the Clerk to refile Dkt. No. 19 as Dkt. No. 17, Exhibits numbered 3 through 11. *See* Dkt. No. 36.

15(a)(1)-(2). *See* Dkt. No. 46. Canidae filed a stipulated motion in which the parties agreed to request additional time for Canidae to respond to the Coopers' Amended Counterclaims, replacing the Coopers' original counterclaims and mooting Canidae's initial Motion to Dismiss Counterclaims (Dkt. No. 33). *See* Dkt. No. 49. The Court granted the extension for Canidae to file an answer or otherwise respond, Dkt. No. 50, and Canidae timely filed the instant Motion to Dismiss on October 29, 2021. Dkt. No. 51. For convenience and clarify, the undersigned refers to the amended counterclaims under consideration here as simply "counterclaims."

The Coopers did not respond to Canidae's current Motion to Dismiss, and the time to do so has expired under Local Rule 7.1(e).

Also, before the Court is Canidae's Request for Judicial Notice, filed on December 10, 2021. Dkt. No. 57. In this motion, Canidae asks the Court to take judicial notice of the "documents and information in support of its Motion to Dismiss Defendants' Amended Counterclaims." *Id.* at 2. Again, the Coopers did not respond to Canidae's Request for Judicial Notice, and the time to do so has expired.

For the reasons explained below, the undersigned GRANTS Canidae's Request for Judicial Notice and RECOMMENDS that Canidae's Motion to Dismiss (Dkt. No. 51) be GRANTED.

### III.  PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

First before the Court is Canidae's Request for Judicial Notice. Dkt. No. 57. And the undersigned resolves this motion first because the documents offered for notice are

relevant to Canidae's Motion to Dismiss, which is addressed next. In this motion, Canidae asks the Court to "take judicial notice of the following documents and information in support of its Motion to Dismiss Defendants' Amended Counterclaims," and lists two sets of documents, one from the United States District Court for Delaware and one from the Texas Workforce Commission ("TWC"). *Id*. at 2.

A.   Legal Standards for Judicial Notice

As a preliminary matter, a motion for judicial notice is a non-dispositive motion that a magistrate judge may resolve. 28 U.S.C. § 636(b)(1)(A); *see also* Dkt. No. 20. In deciding a Rule 12(b)(6) motion to dismiss, a court may consider facts of which it may take judicial notice. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir.1996).

A court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may accept as true facts that can be "accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2).

Although a court may take notice of a document filed in another court to establish the fact of such filing, "a court cannot take judicial notice of the factual findings of another court," because another court's findings do not constitute facts not subject to reasonable dispute. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998) (citing Fed. R. Evid. 201). "Rule 201 does not permit a court to take judicial notice of findings of fact

6

from other proceedings because those facts are usually disputed and almost always disputable." *Anderson v. Dall. Cnty., Tex.*, No. 3:05-CV-1248-G, 2007 WL 1148994, at *3 (N.D. Tex. Apr. 18, 2007), *aff'd*, 286 F. App'x 850 (5th Cir. 2008). And a court may not take judicial notice of another court's proceedings to establish facts supporting—or disproving—legal elements. *Brown v. Extraco Mortg. Co.*, 256 F. App'x 713, 714 (5th Cir. 2007).

In contrast to potentially disputed facts, "[j]udicial records are a source of "reasonably indisputable accuracy" when they record some judicial action, including dismissing an action. 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 5106.4 (3rd ed. Supp. 2021).

Similarly, records from state agency proceedings may be judicially noticed but, like court documents, only to the extent that the proceedings or the facts in those records are undisputed and not to prove any statements or findings made during the proceedings. *See Spann v. Frisco Indep. Sch. Dist.*, No. 4:19-CV-00603-SDJCAN, 2020 WL 2167624, at *3 (E.D. Tex. Apr. 14, 2020), *R & R adopted* No. 4:19-CV-603, 2020 WL 2126423 (E.D. Tex. May 5, 2020) (taking judicial notice of TWC documents solely to determine whether plaintiff had sufficiently alleged administrative remedy exhaustion) (internal citations omitted). Relevant here, a court may take judicial notice of TWC documents for the purpose of determining whether a party sufficiently pleaded exhaustion of administrative remedies. *Hernandez v. Univ. of Texas-Pan Am.*, No. 7:17-CV-197, 2017 WL 6444957, at *8 (S.D. Tex. Aug. 10, 2017) (finding on a 12(b)(6) motion that TWC documents

showed claimant failed to exhaust administrative remedies and the claim was time-barred); *see also Thomas v. Link Staffing*, No. 4:17-CV-3902, 2019 WL 497617, at *4 (S.D. Tex. Jan. 8, 2019), *R & R adopted sub nom. Thomas v. Staffing*, No. CV H-17-3902, 2019 WL 480133 (S.D. Tex. Feb. 7, 2019) (reviewing TWC filings to conclude that plaintiff failed to exhaust his administrative remedies).

B.  <u>Discussion and Analysis</u>

Canidae asks the Court to take judicial notice of a set of "filings submitted by [Canidae]" in the Delaware lawsuit and a set of "filings and submissions related to Mr. Cooper's wage claim filed with the Texas Workforce Commission. . . ." Dkt. No. 57 at 2. The two sets of documents include various pleadings, motions, notices, court orders, and TWC findings. *See id*. at 2-3. Canidae urges that "[t]he Court is authorized to take judicial notice of the information requested" because it consists of "facts 'generally known within the trial court's territorial jurisdiction' or which 'can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.'" *Id*. at 3. Canidae argues that "[i]f a party requests judicial notice of a fact and the court is supplied with the necessary information, the Court "must" take judicial notice of that fact." *Id*.

Although Canidae does not clearly identify in its motion which facts it wishes the Court to judicially notice—other than presumably the fact that these documents were filed in the respective proceedings—it argues that the tendered documents "have a direct relation to the Coopers' Amended Counterclaims" and "these filings demonstrate that the Coopers'

claims of malicious prosecution and breach of contract for unpaid wages should be dismissed." *Id*. at 3-4.

When the undersigned considers Canidae's Request for Judicial Notice and related documents together with its Motion to Dismiss and the Coopers' counterclaims, that context makes clear that Canidae offers the documents from the Delaware federal court to defeat the Coopers' malicious prosecution counterclaim by showing that there was no termination of the Delaware federal court proceedings in the Coopers' favor, a necessary element of that counterclaim, as discussed below. Specifically, among the several documents Canidae asks the Court to judicially notice is an order of the United States District Judge dismissing the Delaware lawsuit on the basis that the court there lacked personal jurisdiction over the Coopers. Dkt. No. 57-5. This document appears to establish that the Delaware court did not reach the merits of that case, thus precluding the Coopers from establishing one of the elements of their malicious prosecution counterclaim.

Additionally, Canidae appears to offer the TWC records to defeat the Coopers' breach of contract counterclaim by showing that the counterclaim is barred from judicial review. Specifically, Canidae asks this Court to judicially notice Dkt. No. 57-10, which states that Edward Cooper failed to exhaust his administrative remedies in connection with his wage claim. Canidae argues that the Coopers' breach of contract counterclaim is really a wage claim in disguise. Dkt. No. 51 at 28.

The undersigned determines that Canidae's Request for Judicial Notice meets Rule 201's "not subject to reasonable dispute" standard, particularly when the Coopers have not

responded the motion. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998). The Delaware court documents are matters of public record, and the Court may take judicial notice of those proceedings. *See Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020). And the TWC documents are offered to show that Edward Cooper failed to exhaust administrative remedies, not for notice of the factual statements or findings of fact made during the proceedings. *See Thomas*, 2019 WL 497617, at *4. Further, the TWC documents are not contested; the Coopers did not allege any facts related to those proceedings when asserting their counterclaims, nor did they respond to the Motion to Dismiss or the Request for Judicial Notice. The undersigned determines that the TWC documents, like the Delaware court proceedings, satisfy Rule 201's standard.

Thus, the Court GRANTS Canidae's Request for Judicial Notice to the extent that the Court takes judicial notice of (1) the Delaware federal court order dismissing that lawsuit on the basis that the court there lacked personal jurisdiction over the Coopers (Dkt. No. 57-5), and (2) the TWC Wage Claim Appeal Tribunal's Order of Dismissal for failure to timely appeal the preliminary wage determination order related to Edward Cooper's wage claim. (Dkt. No. 57-10).

## IV. SUBJECT MATTER JURISDICTION FOR COUNTERCLAIMS

Before analyzing the merits of the Motion to Dismiss, the Court has a duty to determine whether each counterclaim is either compulsory or permissive because the issue is jurisdictional. *Plant v. Blazer Fin. Servs., Inc. of Georgia*, 598 F. 2d 1357, 1359 (5th Cir.

1979); *see also Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (instructing that every court has an independent duty to determine whether it has proper jurisdiction).

District courts in the Fifth Circuit analyze subject matter jurisdiction for counterclaims through a three-step process. *See Alford v. State Parking Servs., Inc.*, No. 3:13-CV-4546-L, 2014 WL 6977639 (N.D. Tex. Dec. 10, 2014). First, the court must determine whether the counterclaim is compulsory or permissive under Rule 13(a) and (b). *Plant*, 598 F. 2d at 1359. A counterclaim is compulsory under Rule 13(a) when "(A) it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a).

In determining whether a claim arises out of the same transaction or occurrence, the Fifth Circuit applies the logical relationship test. *Park Club, Inc. v. Resol. Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992) (cleaned up). A counterclaim has a logical relationship to the original claim "if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." *Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 715 (5th Cir. 1970). "The logical relation test is a loose standard which permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits." *Plant*, 598 F. 2d at 1361 (internal quotation omitted).

11

If the counterclaim satisfies the logical relationship test, it is compulsory, the court has supplemental jurisdiction, and the jurisdictional analysis ends there. *Zurn Indus., Inc. v. City of Garland*, 847 F.2d 234, 236-37 (5th Cir. 1988) (citing *Plant*, 598 F.2d at 1359–60); *see also* WRIGHT & MILLER, *supra*, at § 1414 (documenting that the Judicial Improvement Act of 1990 "combined the concepts of pendent and ancillary jurisdiction into a newly defined concept of 'supplemental jurisdiction," thus extending "[t]he power of the district court to assert jurisdiction over compulsory counterclaims that do not have an independent basis of federal subject-matter jurisdiction" on the basis that the "claims in the action that are so related to claims over which the court has original jurisdiction as to form part of the same case or controversy.").

The undersigned concludes that the Coopers' counterclaims either grew out of the same aggregate of operative facts that serve as the basis of for Canidae's claims, *i.e.,* the parties employment relationship, or that the aggregate core of facts in Canidae's claims activated additional legal rights asserted in the Coopers' counterclaims. For these reasons, the undersigned concludes that the Coopers' counterclaims are compulsory under Rule 13(a) and that this Court has jurisdiction over those counterclaims.[5]

---

[5] A permissive counterclaim is simply a claim that is not compulsory. Fed. R. Civ. P. 13(b). For permissive counterclaims, courts must look for an independent basis for jurisdiction over the claim, either federal question or diversity, *id*., and, if finding none, look for supplemental jurisdiction under Section 1367. 28 U.S.C. § 1367; *see also Powers v. United States*, 783 F.3d 570, 577 (5th Cir. 2015). Here, those steps are unnecessary for the reasons explained above.

## V. MOTION TO DISMISS AMENDED COUNTERCLAIMS

A. <u>Legal Standard for a Motion to Dismiss Under Rule 12(b)(6)</u>

Canidae brings its Motion to Dismiss Amended Counterclaims under Rule 12(b)(6), which authorizes the dismissal of a claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, pleadings must demonstrate specific, well-pleaded facts, not merely conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The Court must accept those well-pleaded allegations as true and view them in the light most favorable to the claimant. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). And while courts hold pro se claimants to a more lenient standard than lawyers when analyzing complaints, such claimants must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

"The purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." WRIGHT & MILLER, *supra*, at § 1356. In other words, Rule 12(b)(6) "must be read in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. Thus, dismissal under Rule 12(b)(6) "turns on the sufficiency of the '*factual* allegations' in the complaint." *Smith v. Bank of Am., N.A.*,

615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (emphasis in original).

To defeat a Rule 12(b)(6) motion to dismiss, a claimant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "raise a right to relief above the speculative level." *Id.* at 555. While a claimant need not detail specific factual allegations, a claim must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that "the tenet that a court must accept as true all of the allegations in the compliant is inapplicable to legal conclusions").

"A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The Supreme Court remarked in *Iqbal* that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citations omitted). In sum, when claimants "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

14

In ruling on a Rule 12(b)(6) motion, the court does not evaluate the claimant's likelihood of success. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 376 (5th Cir. 2004). Rather, it only assesses whether the claimant has pleaded a legally cognizable claim. *Id.* "Whether [claimants] have the ultimate burden of proof at trial on any of their claims is irrelevant here because, for purposes of Defendants' Rule 12(b)(6) motion, [claimants] have no burden of proof. Rather, the issue is whether [claimants], based on their pleadings, have stated a claim upon which relief can be granted." *Preston v. Seterus, Inc*., 931 F. Supp. 2d 743, 751 (N.D. Tex. 2013).

"In determining whether a [claimant's] claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Gomez v. Galman, et al.*, No. 20-30508, 2021 WL 5371112, at *2 (5th Cir. Nov. 18, 2021) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

The undersigned applies these standards to the Coopers' counterclaims, filed while acting as pro se litigants. They have since retained counsel. Dkt. No. 58.

B. Summary of the Coopers' Counterclaims

The Coopers allege that after they resigned in April 2019, Canidae committed several tortious acts, namely "unauthorized use of likeness," "slander and defamation,"

malicious prosecution, and "attempted fraud, willful misconduct, and malice."[6] Dkt. No. 46 at 2-13. Specifically, the Coopers claim that Canidae "[has] and continue[s] to use Edward Cooper's name, image, and likeness, and are doing so without his permission," to capitalize on Edward Cooper's established reputation for high-level of quality in the pet food industry. *Id*. at 4-5, 13. The Coopers allege "slander and defamation," claiming that Canidae "did make contacts and have communications that were intended to interfere with [the Coopers'] prospective business relationships." *Id*. at 6.

The Coopers allege that Canidae's pursuit of this lawsuit is "vindictive resentment and intent to harass and cause harm" because of the Coopers' resignations. *Id*. at 8. The continued litigation after the original suit was dismissed in Delaware district court, with pleading deficiencies identified by the Coopers, makes pursuit an intent to do harm. *Id*.

The Coopers claim "attempted fraud, willful misconduct, malice," by "Plaintiffs having secretly made such transformation changes," by converting from Canidae Corporation to Canidae LLC, and then inducing the Coopers into ambiguous agreements in a "direct attempt to intentionally defraud Defendants of any consideration regarding employment." *Id*. at 8-12.

---

[6] A court must read between the lines of pro se pleadings to determine if they present a viable claim under an improper legal label or no label at all. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). So, the undersigned determines that the proper legal label for the Coopers' claim for "unauthorized use of likeness" is a claim for misappropriation, their claim for "slander and defamation" is a claim for defamation, and "attempted fraud, willful misconduct, and malice" is a claim for fraudulent misrepresentation.

The Coopers further allege that Canidae Corporation breached Edward Cooper's employment agreement to pay a "performance bonus based on company profitability" by failing to pay the promised 2018 bonus. *Id*. at 16.

C. Summary of Canidae's motion and exhibits

In its Motion to Dismiss Amended Counterclaims, Canidae claims that the Coopers have failed to state a plausible claim as to any counterclaim because the Coopers failed to plead with the specificity required by Rule 8 and the counterclaims themselves are conclusory. Dkt. No. 51 at 1. Canidae first asserts that claims for "misappropriation and slander/defamation must fail because they have been brought outside of the statute of limitations."[7] *Id*. Canidae also urges that the Coopers' claim for defamation is statutorily barred for failure to request retraction. *Id*. Canidae asserts that the claim for malicious prosecution claim is premature because "there has been no termination of an underlying proceeding." *Id*. Canidae claims that the Coopers failed to plead all of the required elements of fraud, and finally, that the breach of contract claim is really a wage claim, already adjudicated through the TWC. *Id*. at 1-2.

As discussed above, Canidae filed eleven exhibits in its Motion to Dismiss, consisting of select documents filed in the Delaware federal court and TWC proceedings. *See* Dkt. No. 57-1 through 57-11. The undersigned takes judicial notice of these documents to the extent noted above.

---

[7] The undersigned notes that Canidae does not ask the Court to dismiss the Coopers' request for injunctive relief for the alleged misappropriation. Because the issue was not raised in the Motion to Dismiss, the undersigned leaves the request for injunctive relief for review at a later time when properly brought before the Court.

D.  Choice-of-law for tort and contract claims

As the undersigned addressed at length in its February 9 FCR, the parties dispute which states' law is applicable to the claims between them. *See* Dkt. No. 62. And as the undersigned already observed, the "choice-of-law determinations that are intertwined with Canidae's claims, the Coopers' counterclaims, and Canidae's Motion to Dismiss involve factual disputes that are ill-suited for resolution on a Rule 12(b)(6) motion and legal questions that the parties did not address." *Id*. at 13-14. As of the date of this order, the parties have not fully briefed the choice-of-law issues, and so the undersigned applies the same choice-of-law principles that the February 9 FCR required, and briefly restates the governing law here.

A federal court sitting in a diversity case must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225 (5th Cir. 2010); *see also Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Where the parties do not dispute which law applies, either expressly or tacitly, the court applies the law of the forum state with the most significant relationship to that particular substantive issue. *See Jackson v. Wells Fargo Home Mortgage.*, Civ. Action No. 3:18-CV-937-M-BH, 2019 WL 3606463, at n.4 (N.D. Tex. July 17, 2019), *R&R adopted* 2019 WL 3574258 (N.D. Tex. Aug. 6, 2019) (applying Texas substantive law at the motion to dismiss stage to diverse parties who did not dispute that Texas law applied); *see also* WRIGHT & MILLER, *supra*, at § 4506 ("Additionally, several courts have held that the district court judge may forgo an independent choice-of-law analysis if the

parties have agreed, either expressly or tacitly, as to which state's laws should control their case.").

In their Amended Counterclaims, the Coopers do not address which state law applies. *See* Dkt. No. 46. In the sole reference to law, the Coopers cite "Texas Common Law" to establish legal grounds for their misappropriation claim. *Id*. at 13. And in its Motion to Dismiss, Canidae likewise cites Texas statutes and caselaw in asking the Court to find the Coopers failed to plead sufficient facts. *See* Dkt. No. 51. Thus, the parties do not appear to dispute, even tacitly, that Texas law applies to the tort counterclaims here.

And as the undersigned determines below, the Coopers' claim for breach of Edward Cooper's employment contract is accurately analyzed as a claim for an unpaid wage which Edward Cooper elected to pursue through Texas's statutory administrative remedies under the Texas Payday Act. For this reason, the undersigned applies that Texas statute to the Coopers' claim for breach of contract. *See Brown v. Joseph Cory Holdings, LLC*, No. 4:13-CV-044-Y, 2014 WL 12585674, at *2 (N.D. Tex. July 30, 2014) (applying the Texas Payday Act in a diversity jurisdiction case).

E.  Discussion and Analysis of the Coopers' Claims

The undersigned considers whether the Coopers' counterclaims survive Canidae's Motion to Dismiss.

i.  *Misappropriation*

The Coopers claim that since Edward Cooper's resignation in April 2019, Canidae "continues to use his likeness for the value associated with it in a means to indicate he is

still responsible for the manufacturing of their pet foods; thereby obtaining the value and benefits of Edward Coopers [sic] name and identity." Dkt. No. 46 at 4. Edward Cooper has worked in the pet food industry since 1983 and is well-known by both name and image to others in the industry. *Id*. at 5. The Coopers allege that Edward Cooper's name "is associated with a high level of quality and his unique ability to manage and solve manufacturing problems in the pet food industry." *Id*. at 4.

The Coopers claim that Canidae uses Edward Cooper's image "in their advertising methods" at "retail pet stores, at industry trade shows, on display on their website, on social media sites . . . such as YouTube that are linked to their website, and/or published by Canidae, LLC." *Id*. Specifically, the Coopers claim that Canidae continues to use a picture of Edward Cooper "solely standing in front of the Ethos Pet Nutrition manufacturing facility," as well as a promotional video in which Edward Cooper represents Ethos Pet Nutrition. *Id*.

The Coopers, on information and belief, allege that Canidae suffers from manufacturing disasters and legal issues related to its poor-quality pet foods, and bolsters its own poor image with Edward Cooper's established reputation, thereby both gaining value from and devalue Edward Cooper's reputation. *Id*. at 5.

Canidae claims that the Coopers' claim of "name misappropriation," fails for three reasons: "(1) it is time-barred; (2) Edward Cooper has not sufficiently described or identified the marketing through which Canidae has allegedly misappropriated his name, image, or likeness, and (3) Edward Cooper has not alleged that his name, image, or likeness

obtained independent value among retail customers, the subject of [Canidae's] advertising." Dkt. No. 51 at 14-15.

Canidae claims, first, that the Coopers bring the claim outside the two-year statute of limitations because the Coopers allege that the unauthorized use began after Edward Cooper resigned on April 21, 2019, but first asserted the claim on July 22, 2021. *Id*. at 16. Next, Canidae asserts that the Coopers have not sufficiently described or identified the alleged misappropriated materials because they did not state when or where these materials were used. *Id*. at 17. Finally, Canidae claims that the Coopers failed to show that Edward Cooper's name, image, and likeness have independent value that Canidae "cashed in" to obtain that value. *Id*. at 18.

### 1. Elements of misappropriation

Under Texas law, "the tort of misappropriation provides protection from the unauthorized use of one's name, image, or likeness," which is a form of privacy right. *Brown v. Ames*, 201 F.3d 654, 657–58 (5th Cir. 2000) (citing *Moore v. Big Picture Co.*, 828 F.2d 270, 275 (5th Cir. 1987)) (applying Texas substantive law). To state a claim for misappropriation under Texas law, a plaintiff must show that "(1) the defendant misappropriated the plaintiff's name or likeness for the value associated with it and not in an incidental manner or for a newsworthy purpose; (2) the plaintiff can be identified from the publication; and (3) the defendant derived some advantage or benefit." *Brown*, 201 F.3d at 657–58. Further, plaintiff must show that the defendant obtained some advantage or benefit from appropriating plaintiff's name or likeness. *Watkins v. Cornell Companies*,

*Inc.*, No. 3:11-CV-260-M-BN, 2013 WL 1914713, at *7 (N.D. Tex. Mar. 15, 2013), *R & R adopted* No. 3:11-CV-260-M-BN, 2013 WL 1926375 (N.D. Tex. May 8, 2013) (applying Texas substantive law).

To establish the value of a plaintiff's name or likeness, the plaintiff must show something unique and valuable such that the defendant can "cash in on goodwill." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 638 (5th Cir. 2007). A plaintiff must plead more than the "bare allegation" that the materials at issue show the face or likeness of the claimant without prior written consent. *Watkins*, 2013 WL 1914713, at *7.

### 2. Analysis

In the first asserted ground for dismissal, Canidae claims that the Coopers bring the misappropriation claim outside the statute of limitations. Dkt. No. 51 at 16. Texas provides a two-year statute of limitations for misappropriation claims. TEX. CIV. PRAC. & REM. CODE § 16.003(b) (West, current through 2021 Reg. and Called Sess. of the 87th Legis.). The two-year clock begins when the plaintiff first knew or should have known of the of the alleged misappropriation. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011) ("Causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy.").

Here, the Coopers allege that "[s]ince Edward Cooper's resignation, Canidae LLC continues to use his likeness for the value associated with it," appearing to assert that the misappropriation began as soon as Edward Cooper was unaffiliated with Canidae LLC. Dkt. No. 46 at 4. And considering the public nature of the alleged misappropriation and

Edward Coopers' continued involvement in the same industry as Canidae, there is nothing to plausibly suggest that he either did not or should not have known of the alleged misappropriation, which appears to have started soon after his resignation in April 2019.

In the absence of tolling or continuing violations, discussed immediately below, a timely misappropriation claim must have been filed no later than April 2021. But here, the Coopers first asserted this counterclaim as an exhibit to their first Answer, filed on July 22, 2021. The Coopers' factual allegations in support of this counterclaim do not plausibly support the application of any equitable tolling principles, nor were any such arguments put forth in response to the Motion to Dismiss. Nor do the misappropriation allegations sufficiently identify the offending marketing materials or means of misappropriation to enable the Court to plausibly conclude either that a continuing tort or a series of non-time-barred, discrete violations occurred. And again, the Coopers did not file a response to the Motion to Dismiss.

For these reasons, the undersigned RECOMMENDS that the Coopers' counterclaim for misappropriation be DISMISSED with prejudice as time barred.

## ii.    *Defamation*

The Coopers claim that Canidae defamed their names by "mak[ing] contacts and hav[ing] communications that were intended to interfere with prospective business relationships." Dkt. No. 46 at 6. The Coopers claim that after their resignation, Canidae sent them cease-and-desist letters that stated an intention to communicate about the Coopers with third parties. *Id.* The Coopers' counsel-at-the-time responded with a warning

that "such action is tortious interference with a contract and/or tortious interference with a prospective business relationship." *Id.*

The Coopers assert that Canidae ignored this warning and "made false and derogatory statements to key industry professionals, employees, and others regarding the character of [the Coopers], and their ineligibility to work in the industry." *Id.* at 7. Upon information and belief, the Coopers claim that Canidae "contacted several suppliers within the pet food industry, as recently as this year, and told them that Edward Cooper is prohibited from conducting any business with them." *Id.* The Coopers allege that these actions caused actual but unspecified damages. *Id.* at 14.

Through its Motion, Canidae challenges these claims by arguing that, like the misappropriation claim, the claim for defamation must be dismissed because (1) the claim is time barred, (2) the Coopers failed "to comply with statutorily prescribed prerequisites to bringing their claim," and (3) the Coopers fail to plead all elements of their claim. Dkt. No. 51 at 19-20.

### 1.  Elements of defamation

Defamation at its core is "the invasion of a person's interest in her reputation and good name." *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). Under Texas law, to sufficiently plead a plausible claim for defamation, a plaintiff must show "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, at least amounting to negligence, and (4) damages." *Innovative Block of S. Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d

409, 417 (Tex. 2020). "Truth provides an absolute defense to a defamation claim." *Iroh v. Igwe*, 461 S.W.3d 253, 264 (Tex. App.—Dallas 2015, pet. denied).

A statement that injures a person's profession or occupation is *per se* defamation. *Hancock*, 400 S.W.3d at 66. A statement is injurious if it "ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit." *Id.* at 66-67 (quoting Restatement (Second) of Torts § 573 (1977)). A court must determine if a statement accuses a professional of lacking a peculiar or unique skill that is necessary for the proper conduct of the profession. *Id.* at 66-67.

Texas' Defamation Mitigation Act specifies that a plaintiff may maintain an action for defamation only if the plaintiff serves a timely and sufficient request to correct, clarify, or retract on the defendant within the limitations period for bringing the action. *See* TEX. CIV. PRAC. & REM. CODE § 73.055(a)-(b), (d). And the statute of limitations to bring a defamation claim is one year after the allegedly defamatory statements were made. *Xiumin Li v. Genentech, Inc.*, No. 3:17-CV-712-B, 2017 WL 6886720, at *11 (N.D. Tex. Dec. 20, 2017), *R & R adopted* No. 3:17-CV-712-B, 2018 WL 369157 (N.D. Tex. Jan. 10, 2018) (citing TEX. CIV. PRAC. & REM. CODE § 16.002(a)).

### 2. Analysis

The Coopers allege sparse facts to support their defamation claim. They state that Canidae sent a letter "shortly after" their resignations in April 2019, threatening to inform "past and potential employers" that the Coopers were "prohibited from dealings in the pet

25

industry." Dkt. No. 46 at 14. The Coopers do not allege sufficient facts to plausibly demonstrate what makes the statements "false and derogatory," to whom Canidae made the statements, or when, aside from being threatened "shortly after" April 2019 and possibly reoccurring as recently as "this year." *Id.* at 6-7. And while the Coopers claim that they suffered "actual damages to be proven at trial," they do not provide facts plausibly showing how the statements caused damages. *See id.* at 14.

In short, the Coopers have failed to allege sufficient facts to plausibly demonstrate what statements were made, what made the statements false, how they were defamatory, when the statements were made, by whom and to whom they were made, and how those statements injured them. Without pleading more than "labels and conclusions," the Coopers have failed to allege a plausible claim for relief.

For these reasons, the undersigned FINDS that the Coopers failed to allege sufficient facts to show a plausible claim for defamation and RECOMMENDS that the Court GRANT Canidae's Motion to Dismiss Amended Counterclaims on the Coopers' claim for defamation.

### iii.    *Malicious Prosecution*

The Coopers assert a counterclaim for malicious prosecution, alleging that Canidae pursued litigation against them due to "vindictive resentment and intent to harass and cause harm." *Id*. at 8. The Coopers claim that Canidae originally filed suit in order to "get the value of the bonus" Edward Cooper had previously received. *Id*. at 7. When Canidae originally filed in Delaware district court, the Coopers allege that Canidae was made aware

of "false statements" and "deficiencies" in its complaint. *Id*. at 8. Thus, Canidae pursues

its claims with malice, exacerbated due to the fact that "Defendant suffer[s] from serious

health issues." *Id*. The Coopers state that Canidae's relentless litigation caused "loss of

gainful employment opportunities in the industry." *Id*.

In response, Canidae asserts that the Coopers' malicious prosecution claim must be

dismissed for being premature, and alternatively, for failing to plead a special injury. Dkt.

No. 51 at 25. Canidae first states that a claim for malicious prosecution requires a

termination of the underlying proceedings, which has not occurred yet. *Id*. Canidae alleges

that the Coopers mistakenly believe that the Delaware court's dismissal for lack of personal

jurisdiction qualifies "as a termination of the proceeding in the Coopers' favor." *Id*. at 26.

Further, Canidae points to the Coopers' lack of pleading a special injury as required. *Id*.

### 1.  Elements of malicious prosecution

To state a claim for malicious prosecution under Texas law, a plaintiff must show:

"(1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the

insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of

probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor;

and (6) special damages." *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996)

(internal quotation removed). A dismissal of an action without a ruling on the merits fails

to satisfy the "favorable termination" requirement. *See Duzich v. Advantage Fin. Corp.*,

395 F.3d 527, 529 (5th Cir. 2004) (finding that on a Rule 12(b)(6) motion, the district court

properly dismissed a malicious prosecution claim when the plaintiff failed to show a prior

adjudication on the merits of the particular case). And dismissal without prejudice "indicates that the suit is dismissed without a decision on the merits and is not conclusive of the rights of the parties." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 527 (5th Cir. 2016) (citing *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011)).

### 2. Analysis

Here, the Coopers fail to plead facts showing a plausible malicious prosecution claim. A favorable termination of a prior lawsuit is required, and Canidae's claims against the Coopers have not been terminated on the merits, nor favorably for the Coopers. Although the Coopers point to the Delaware federal court dismissal as support, the Delaware court dismissed Canidae's claims without prejudice, and cannot satisfy the favorable termination on the merits requirement.[8] *See* Dkt. No. 57-5 at 4-5.

For these reasons, the undersigned FINDS that the Coopers failed to allege sufficient facts to show a plausible claim for defamation and RECOMMENDS that the Court GRANT Canidae's Motion to Dismiss the Coopers' amended counterclaim for malicious prosecution.

### iv.    *Fraudulent Misrepresentation*

Next, the Coopers claim that Canidae attempted to "execute an assigning document to effectuate overreaching by the gaining of an unconscionable advantage over another

---

[8] The undersigned also notes that because the Court determined that Canidae's claims survived the Coopers' 12(b)(6) Motion to Dismiss, Dkt. No. 62, finding that Canidae stated a plausible claim for relief as to all its claims, Canidae has likely cleared the probable cause requirement, and thus, the Coopers' malicious prosecution claim would also fail on that element.

especially by unfair or deceptive means." Dkt. No. 46 at 15-16. Although the Coopers' facts that purportedly support this claim are hard to follow, the Coopers appear to allege that Canidae Corporation, a California entity, secretly converted to Canidae LLC, a Delaware entity, in an effort to confuse or deprive the Coopers of the ability to negate Canidae's transformational change. *Id*. at 9-10. Canidae then allegedly attempted to induce the Coopers into signing the "Incentive Plan," and its related Omnibus Joinder and Spousal Agreement, to "assume an assignment of employment" from the Coopers to the new Canidae entity. *Id*. at 11. The Coopers also allege that they were both denied promised bonuses for work performed in 2018. *Id*. at 10.

In its Motion to Dismiss, Canidae claims that the Coopers' claim of fraudulent misrepresentation fails to satisfy the elements for that claim, and must be dismissed. *Id*. Canidae asserts that the Coopers' fail to identify what misrepresentations were made or that the Coopers' detrimentally relied on any alleged misrepresentation. *Id*.

1.  Elements of fraudulent misrepresentation

To allege a plausible claim for relief for fraudulent misrepresentation under Texas law, a plaintiff must establish that "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

Further, a claim for fraud is subject to heightened pleading requirements laid out in the Federal Rules, which dictates that "party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Pleading fraud with particularity requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated simply, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).

2.   Analysis

Under a liberal construction of the Coopers' claim for fraud, they appear to allege that their employer, Canidae Corporation, covertly reorganized as Canidae LLC to avoid its obligations to the Coopers, and attempted to induce the Coopers into agreements requiring their continued performance in their positions even in the absence of those obligations. These are not specific allegations showing the "when, where, what, and who" required for the heightened pleading standards for a fraud claim. And in their allegations, the Coopers appear to state that the fraudulent acts were unsuccessful, because the Coopers found the new agreements questionable, and did not sign, except for Christine Cooper, who signed the Spousal Agreement at the direction of her supervisor, Edward Cooper. Dkt. No. 46 at 10.

30

Even the Coopers statements that both were promised a bonus fails to meet the pleading standard because they do not "state time, place and contents of the false representations, as well as the identity of the person" making the statement. *Williams*, 112 F.3d at 177.

While the Coopers clearly appear displeased with the legal restructuring of the defendant entities, they have fallen far short of alleging enough facts to plausibly support that the restructuring was part of or included fraudulent misrepresentations made to them.

For these reasons, the undersigned FINDS that the Coopers failed to state a plausible claim for fraudulent misrepresentation and RECOMMENDS that the Court GRANT Canidae's Motion to Dismiss the Coopers' construed counterclaim for fraudulent misrepresentation.

> v.    *Breach of Contract*

Finally, the Coopers allege that Canidae breached Edward Cooper's employment agreement by failing to pay the annual bonus for 2018. Dkt. No. 46 at 16. The Coopers allege that "Canidae entered into a bonus incentive plan with defendant, Edward Cooper at the time of his employment," and that every year prior to 2018, Canidae paid the bonus per the agreement. *Id*. At the end of 2018, however, Canidae Corporation CEO told Edward Cooper that "the bonus would be paid by the end of the first quarter of 2019," however, at the end of that quarter, Canidae LLC's new CEO informed Edward Cooper "that no bonuses would be awarded for promises that had been made by prior ownership." *Id*. at 10.

Canidae responds by asserting that the Coopers' claim for breach of contract is actually a wage claim under the Texas Payday Act, and that the claim is barred from judicial review because the Coopers failed to exhaust administrative remedies in connection with that claim. Dkt. No. 51 at 21. (citing TEX. LAB. CODE. § 61.055). Canidae asserts that Edward Cooper filed a wage claim with the TWC, which denied the claim, and then Edward Cooper failed to timely appeal or seek proper judicial review of the TWC decision. Dkt. No. 51 at 21. Because the Coopers failed to exhaust the administrative process, Canidae argues that their claim must be dismissed. *Id*.

1. Choice of substantive law and its elements

The parties characterize the Coopers' claim differently, the Coopers as a breach of Edward Cooper's employment contract for failure to pay the 2018 bonus, and Canidae as a wage claim. Because the undersigned determines above that the Coopers' claim for breach of contract is actually a claim seeking to recover a lost wage, sought first through the TWC administrative processes, the claim is subject to Texas law. *See supra* Section IV. A claim brought under Texas statutes and administrative processes related to a wage claim must be evaluated by those applicable Texas substantive laws. *See Joseph Cory Holdings, LLC*, 2014 WL 12585674, at *2 (applying the Texas Payday Act in a diversity jurisdiction case where claimant alleged denial of promised compensation).

2. Legal mechanism to recover an unpaid wage

To bring a claim seeking to recover an unpaid wage in Texas, an employee may choose to either file a claim with the TWC or file a breach-of-contract claim in court.

*Brown v. Joseph Cory Holdings, LLC*, No. 4:13-CV-044-Y, 2014 WL 12585674, at *2 (N.D. Tex. July 30, 2014). When an employee files a claim with the TWC, he foregoes his common-law causes of action in court, and instead elects to pursue administrative remedies dictated by the Texas Labor Code. *Hull v. Davis*, 211 S.W.3d 461, 465 (Tex. App.— Houston [14th Dist.] 2006, no pet.). Filing a claim with the TWC requires the employee to follow the statute's provisions, which include an employee exhaust administrative remedies under the Texas Payday Act before seeking judicial relief. *Joseph Cory Holdings, LLC*, 2014 WL 12585674, at *2.

A claim for unpaid wages may include a claim for an unpaid bonus that is the result of "an agreement between the employee and employer." TEX. LAB. CODE ANN. § 61.015 (West). When an employee receives an adverse decision from TWC, the employee must timely appeal following the process outline in the decision letter. Failure to appeal a preliminary wage determination renders the order the final decision, and neither party is entitled to judicial review of the order. TEX. LAB. CODE § 61.055.

3.    Analysis

As the undersigned found above, the Court may take judicial notice of the TWC proceedings—including any judicial action and orders of dismissal therein—to the extent that the proceedings and actions occurred, but not the party statements or facts presented in those proceedings. *See supra* Section III.B. Even within these limitations, however, the undersigned has sufficient facts to show that the Coopers' asserted claim for breach of

contract is both a claim for unpaid wages, because he elected to pursue his claim first with the TWC, and is barred under Texas statute.

Looking at the TWC proceedings, Edward Cooper filed a claim for unpaid bonus with the TWC in 2019 and received a preliminary denial on August 21, 2019. *See* Dkt. No. 57-9 at 1. Edward Cooper appealed on September 12, 2019, which was denied as untimely. Dkt. No. 57-10 at 2. Because Edward Cooper filed with TWC and then failed to exhaust his administrative appeals, his claim is barred for judicial review. *See* TEX. LAB. CODE § 61.055; *see also Hull v. Davis*, 211 S.W.3d 461, 465-66 (Tex. App.—Houston [14th Dist.] 2006, no pet.); see *also Fields v. Phillips Sch. of Bus.*, 59 F.3d 1242, 1995 WL 413024, at *2 (5th Cir. 1995) (unpublished) (affirming that dismissal is proper when the plaintiff failed to timely appeal the agency determination of his wage claim).

For these reasons, the undersigned RECOMMENDS that the Court GRANT Canidae's Motion to Dismiss the Coopers' claim for unpaid wages.

## VI.  CONCLUSION

In conclusion, the Court GRANTS Canidae's Request for Judicial Notice to the extent that the Court takes judicial notice of (1) the Delaware federal court order dismissing that lawsuit on the basis that the court there lacked personal jurisdiction over the Coopers, and (2) the TWC Wage Claim Appeal Tribunal's Order of Dismissal for failure to timely appeal the preliminary wage determination order related to Edward Cooper's wage claim.

The undersigned further finds that the Coopers have not pleaded sufficient facts to state a plausible claim for any of the five claims against Canidae. For these reasons, the

undersigned United States magistrate judge RECOMMENDS that the Canidae's Motion to Dismiss Amended Counterclaims, Dkt. No. 51, be GRANTED as to each claim.

## VII.   RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 4th day of August, 2022.

_____

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE